ELLEN LUND v. E. S. WOODWORTH & COMPANY.

February 2, 1899.

Nos. 11,415—(235).

75    501|
85    470

Death by Wrongful Act—Shoveling Grain in Elevator Bin—Negligence of Master.

In an action brought by an administratrix to recover damages for the death of her intestate, alleged to have resulted from defendant's negligence while such intestate was in its employ, it is *held* that, on the evidence, the question of such negligence, and also that of the intestate's assumption of the risk, were for the jury.

Action in the district court for Hennepin county by plaintiff, as administratrix of the estate of Emil Lund, deceased, to recover $5,000 damages for the death of decedent. The cause was tried before Johnson, J., and a jury, which rendered a verdict in favor of plaintiff for $1,000; and from a judgment entered pursuant thereto, defendant appealed. Affirmed.

*Davis, Kellogg & Severance* and *Keith, Evans, Thompson & Fairchild*, for appellant.

*Mosness & Combs*, for respondent.

COLLINS, J.

Plaintiff's intestate, her husband, lost his life in defendant's elevator, and while he was at work therein as a common laborer. Alleging that the death was caused by defendant's negligence, plaintiff brought this action to recover damages, and obtained a verdict.

From the evidence it appears that the deceased, his brother, and a brother of the foreman, were at work in a freight car, which was beside the elevator, getting it in condition for a load of bran which was to be shipped; when the foreman stated that he wanted his brother to remain in the car, and that one of the other men would have to go up into the bran bin to shovel. The deceased, who had worked about two months in the elevator, preferred to go up into the bin, because there was less dust there than in the car while it was being loaded, and left the car for this purpose. He went up-

stairs, and into the bin, took a shovel, and commenced work. About 20 minutes afterwards, the foreman, who had also gone up-stairs, and was standing on the floor outside of the bin, and not within the sight of the man at work, asked a question, and received an answer from him. Soon afterwards the foreman spoke again, received no answer, and, thinking an accident had happened, caused the machinery to be stopped. The man had fallen into the bottom of the bin. The bran had also fallen and covered him up. Death from suffocation immediately ensued.

The bin was on the upper floor, and in a dark corner of the build-ing. It was shown that, until the eyes became accustomed to the conditions, nothing could be seen by a man working therein with-out artificial light. The bin itself was 13 feet wide, 16 feet deep, and hopper shaped, the lower end being called a "leg," a spout being attached beneath, through which the contents of the bin passed as it was being emptied. So far as shown upon the trial, the deceased had worked in the bin but once, the day before the accident, and then while it was being filled, not while bran was run-ning out. This article, it was shown, will not flow freely out of this kind of a receptacle, but it is first necessary to push a stick up through the spout, making an aperture through which the flow can be started. A man is then put into the bin, whose business it is to stand on the sides, and shovel towards the center, thus accelerating the movement. The flow is quite uncertain. Bran will bank up or adhere to the sides, and at times large quantities will suddenly give way, and fall towards the exit. This bin contained about a car load, and nearly half had passed out when the accident occurred. Undoubtedly, the deceased, while shoveling, slipped from one side of the bin towards the center, and was immediately overwhelmed and covered up by a mass of the bran which had fallen, causing him to be smothered to death in a short time. That shoveling in such a place is dangerous work seems certain.

It is the proposition of defendant's counsel that a verdict cannot stand which is based upon the claim that their client was negligent in failing to warn plaintiff's intestate of any danger there might be in doing this work, for the reason that no such issue was tendered

by the complaint. We cannot concur in this construction of the pleading.

It alleged that the bin was dark, and that defendant wrongfully failed and neglected to furnish suitable artificial light for the safety of the intestate while he was at work therein, and that defendant failed and neglected to provide suitable, or any, appliances in said bin for the protection of those who worked therein, or for the prevention of the sudden descent of bran in dangerous quantities upon such workmen; and that, by reason of this failure and neglect, the bin became and was a dangerous place in which to perform the work the intestate was sent to do, all of which was unknown to him, and which he was unable to ascertain, but which was known to defendant. This last allegation was controverted by defendant's answer, and there was considerable contention upon the trial over the issue made thereby. In fact, defendant's counsel insisted all during the trial below, and still insist, that the intestate was not entitled to warning as to dangers, because he really volunteered to leave the car, and to go into the bin, having full knowledge of the kind of work required in that particular place, and appreciating the risk. The pleading was somewhat argumentative, but was sufficient as to this particular point, and was so regarded when counsel answered, as well as upon the trial.

The court charged the jury that the only question as to proper appliances in the bin grew out of the claim that some kind of light should have been provided; so that, finally, defendant's negligence was made to depend, first, upon its failure to advise the intestate of such unusual and unexpected dangers and risks as might not have been obvious to him when going into the bin, but which might have been known to or easily ascertained by defendant; and, second, upon its alleged failure to furnish light in the bin, which might have lessened the danger and risk. Defendant did not claim to have warned Lund as to the slippery and unsafe character of the material he was handling, or the danger and risk incident to going into a bin of this size for the purpose of shoveling bran away from the sides, and towards the aperture in the center through which it ran. Nor did it claim that Lund's previous experience in this kind of work was sufficient to relieve it from responsibility. It did

contend that it had fully equipped the elevator with electric lights, among which was a movable one, to be carried about by hand, which could have been suspended inside of the bran bin. On both of these claims, we think, the question of defendant's negligence was for the jury. The foreman having charge of the work about the elevator fully knew and appreciated the risk and danger appertaining to shoveling bran in a bin of this shape and size, for the purpose of emptying it through its "leg." This was shown by his testimony.

These risks and dangers were unlike those considered in the so-called "gravel pit cases," where the workmen are constantly undermining, and the inevitable result is that the earth must fall upon those who are below and in its way; and were unlike those which attend workmen employed in handling ordinary grain, where, in its movements, the laws of gravitation operate, as a rule, steadily and with uniformity. Not so with bran in a bin which is being emptied. It is uncertain and irregular in its movements. Its adhesiveness will cause the different particles to stick together and to the sides of the bin, requiring much shoveling to detach it; and it may without warning, and when least expected, fall in large quantities, exceedingly dangerous to persons who stand upon it, as Lund was obliged to do while shoveling. While he assumed for himself the ordinary and obvious dangers of the work in which he engaged, he had the right, when sent into this place to shovel,—new employment to him,—to rely upon defendant's obligation to perform its duty. He had the right to assume that he would not, without warning, be subjected to unusual and unnecessary dangers. Of course, it is one thing for a servant to know that dangers exist in a place where he is set at work, or that there are defects in the instrumentalities furnished him with which to do the work, or that such instrumentalities are wanting, and an entirely different thing for him to know or appreciate the risks which may follow from doing the work in such a place, or in doing it with defective instrumentalities, or without instrumentalities. For instance, Lund may have known that there was danger in working in the bin with or without a light, and yet not have appreciated or even suspected the risk he was taking; for the danger was not open and patent, ordinarily discernible by the use of one's senses.

In respect to the claim that a movable light appliance was furnished, which could have been carried into the place, it is enough to say that even if it was in repair and ready for use, and this was in issue on the evidence, there was nothing to show that Lund had ·ever seen this appliance in use,—that is, with a light turned on,— or that he even knew what it was used for. A laboring man cannot be expected to know these things by intuition, and that is what is ·demanded, if counsel are right. More than this, it appeared from defendant's own witnesses that the only way in which this light ·could have been made available at the time Lund was set at work was by signaling the engineer stationed downstairs, and he would then start the dynamo. No effort was made to prove that Lund knew what was necessary in order to advise the engineer that a light was needed at that time of day; and, without this knowledge, the appliance was of no value to him.

We conclude that the case, as made by the evidence, was for the jury on the questions of defendant's negligence and the decedent's assumption of risk.

Judgment affirmed.