LEA COTE *vs.* LAWRENCE MANUFACTURING COMPANY.

Middlesex.    January 25, 1901. — March 2, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, & BARKER, JJ.

In an action by the widow of a workman in a cotton mill to recover for his instantaneous death, caused by being struck by a plank thrown down a dust chimney of the mill, it appeared that the chimney was built with large openings at the bottom into the basement of the mill for the purpose of drawing up and discharging at its top particles of cotton waste and dust. It contained an iron ladder from the bottom to the top and at intervals iron platforms on which were laid planks, the platforms being used by workmen when going up the chimney to sweep down particles of cotton adhering to its sides. There being a fire in this chimney, a workman, sent up the ladder to put it out, threw down two planks which were on fire, and when asked by the defendant's superintendent why he did so, replied that it was easier to put out the fire that way, whereupon the superintendent said "All right." A few hours later another fire broke out in the chimney, and the superintendent called and led the plaintiff's husband with other workmen into the bottom of the chimney where they stood near an alcove which was an enlargement of the bottom of the chimney and had a roof. The superintendent again sent up the ladder the same man who had put out the other fire and thrown down the planks. He threw down another plank which he thought was on fire, which struck and killed the plaintiff's husband, who did not know about the planks being thrown down at the previous fire. He was standing a little inside of the chimney. Before the last plank was thrown down the superintendent had left the place without giving the plaintiff's husband any warning. The workman who threw down the plank testified, that he cried out to warn those below when he did so. The superintendent testified that he expected the workman on the ladder would throw down any planks that were on fire. *Held*, that a verdict for the plaintiff was warranted by the evidence, there being evidence on which the jury might find that the deceased had no notice of the special danger of planks being thrown down and had a right to suppose that the chimney was a safe place, and that there was evidence on which the jury might find that the defendant's superintendent was negligent in knowing the danger and calling on the plaintiff to enter the chimney without warning him of it. The superintendent had no right to assume that the deceased would look out for himself, as the danger was not apparent. The falling of burning cotton waste, which the deceased might have anticipated, would be harmless.

TORT by the widow of Remi Cote under St. 1887, c. 270, as amended by St. 1894, c. 499, to recover for the instantaneous death of her husband, an employee of the defendant, from being struck by a plank thrown down a dust chimney in the defendant's mill. Writ dated May 19, 1900.

At the trial in the Superior Court, before *Maynard*, J., the following facts among others appeared from the evidence: The

plaintiff's husband was a common laborer employed by the defendant in its cotton mills at Lowell, where he had worked for about two years. He was instantly killed and died without conscious suffering on April 6, 1900, under the following circumstances:

The deceased belonged to that division of the defendant's employees known as the "yard hands," whose duties were to unload coal, move cars, handle cotton and perform other services of that kind. Connected with one of the mills of the defendant were two "dust chimneys" so called. On the lower floor of the mill where the accident occurred was what is called a picker room in which is carried on the operation of picking and separating the cotton. In this operation particles of cotton and dust are thrown off into the air, and in order to remove these particles of cotton and dust the following means are employed. Under the picker room and situated on the ground floor is a cellar or basement room, and opening into this room are numerous holes in the floor of the room above. At one side of the basement room are two large chimneys some twelve feet wide at the bottom, eight or ten feet wide at the top and from fifty to sixty feet high, with large openings at the bottom communicating with the cellar or basement before described. The situation and structure of the chimneys are such that they create a strong draft upward tending to draw particles of cotton and dust from the cellar and carry them off into the outer air. The particles of cotton and dust set free in the operation of picking the cotton in the picker room are forced through the holes in the floor from the picker room to the cellar as above described by fans or blowers connected with the machinery used in carrying on the operations in the picker room. Inside of each of the two chimneys before mentioned and attached to one side thereof was a ladder reaching from the bottom to the top, and at intervals of twelve or fifteen feet platforms were carried from the ladder to the other side of the chimney. The ladders and platforms were made of iron, but upon the platforms were placed planks from ten to twelve feet long, from a foot to fourteen inches wide, and from an inch to an inch and a half thick. The ladders and platforms were used by workmen who sometimes went up the chimneys to sweep down particles of cotton adhering to the sides.

On the day of the accident the particles of cotton collected in the basement room before mentioned caught fire, and the men connected with the yard gang were called upon to extinguish the fire, which they did by the use of the hose and by sweeping up the particles of cotton and removing them in barrels.    Among the men thus employed was Remi Cote, the deceased, and most of the other witnesses.    When the fire was practically extinguished in the basement room, it was discovered that there was fire in one of the chimneys, and Matthot and Fortin, two of the witnesses, were sent by the superintendent to extinguish the fire in the chimney.    Matthot went up the iron ladder and, when quite a distance up, observed that some of the planks forming one of the platforms above described were on fire.    Fortin, who remained at the bottom of the chimney, told Matthot to throw down the planks which were on fire as it would be easier to extinguish them in that way. Matthot threw down two planks, and the fire being extinguished, as he supposed, came down the ladder to the bottom of the chimney.    After the planks had been thrown down, Hunt, the superintendent, came along and said to Fortin, " Why did you throw down the planks ? " and Fortin answered, " It is easier to put out the fire that way," and the superintendent said, " All right."    When Matthot came down Fortin told him what the superintendent had said about throwing down planks.    Remi Cote, the deceased, came into the chimney before Matthot went up, was then sent away by Fortin to get a barrel, and did not come back into the chimney until Matthot had come down after throwing down the planks, and did not know that any planks had been thrown down.    It was supposed that the fire in the chimney was extinguished, and the men went away, but Matthot was left to watch.    This was about three o'clock in the afternoon.    About fifteen minutes before six the yard hands, including the deceased and the witnesses in the case, excepting Fortin, were collected under the shed where they were accustomed to collect to wait for orders, when Hunt, the superintendent, came along and said in substance, " There is another fire down in number ten, and you must go down and help Matthot," and he led them down and into the bottom of the chimney.   When they arrived there Matthot was there, and the cotton adhering to

the sides in the upper part of the chimney was on fire. Hunt told Matthot to go up the ladder, and gave him a broom to sweep down the particles of cotton that were on fire, and he then went away and did not return until after the accident. He gave no orders to the men what to do, and did not tell them where to stand. He testified on cross-examination that he expected Matthot to throw down any planks that were on fire. At the bottom of the chimney there was on one side an alcove connected with one side of the bottom of the chimney. This alcove was in effect merely an enlargement of the bottom of the chimney, but it had a roof nearly at right angles with the side of the chimney. One of the men stood under this roof, and the rest stood within the chimney proper, when Matthot went up and the superintendent went away. When Matthot had gone up the ladder about forty feet, he discovered that one of the planks forming the platform was on fire, or thought that it was, and threw it down, testifying that, when he did so, he cried out twice and told them to be careful at the bottom. It struck Remi Cote and another man by the name of Desmarais. Cote was instantly killed and Desmarais badly injured. Desmarais was in the employ of the defendant at the time of the trial and was present in court but was not called as a witness. It was admitted that Cote was instantly killed and died without conscious suffering, and that proper notice was given to the defendant, and also that Hunt was the superintendent of the defendant within the meaning of the statute.

During the course of the trial, thirteen exceptions were taken by the defendant, five of which were to the admission of evidence, five to the refusal of the judge to rule as requested and to direct a verdict for the defendant, and three to instructions given by the judge. The questions raised by these exceptions are stated in the opinion of the court.

The jury returned a verdict for the plaintiff in the sum of $2,250; and the defendant alleged exceptions.

*G. F. Richardson*, (*G. R. Richardson* with him,) for the defendant.

*W. H. Bent*, for the plaintiff.

HOLMES, C. J.   This is an action brought under St. 1887, c. 270, and St. 1894, c. 499, by the widow of one Remi Cote, to

recover for his having been instantaneously killed by reason of the negligence of a superintendent. According to the plaintiff's evidence the facts were these. There had been a fire in a dust chimney in the afternoon. To put it out a man by the name of Matthot had climbed a ladder inside the chimney, and among other things had thrown down two boards from one of the platforms which projected at regular intervals into the chimney. This the deceased did not know. The superintendent saw that the boards had fallen, and asked one Fortin, who seems to have exercised some little official or unofficial authority over Matthot, why they threw the plank down. Fortin gave some reasons and his superintendent answered " All right." This Fortin told Matthot. Some hours later fire broke out again in the chimney, and the superintendent sent Cote and other men to the place. They went there with the superintendent and stood under a little shed at the mouth of the chimney, waiting for orders. Matthot again went up the ladder and threw down another plank which he thought was burning. The superintendent expected that he would do so, if he thought that a plank was on fire. Cote had got a little inside the chimney and was killed. The case is here on exceptions to a refusal to take the case from the jury.

It is argued that the deceased did not use due care. Undoubtedly the jury would have had sufficient warrant for finding so, on the evidence, but it could not be ruled as matter of law. He did not know that boards had been thrown down. He was directed in terms by the superintendent to go to a place separated from the place where he was killed only by the invisible line between the inside and the outside of the chimney. Under their instructions the jury must have found that he reasonably understood that it was his duty to go into the chimney. Indeed, it rather looks as if the superintendent saw him there before leaving the place. We cannot say that the jury were not warranted in finding that the deceased had no notice of the special danger of boards being thrown down, and had a right to suppose that the chimney was a safe place.

As to the negligence of the superintendent he naturally understood, and he says that he did, that Matthot would throw down planks if they seemed to be on fire. He led the deceased to the

place.   We must take it that his orders reasonably would have been understood to call on Cote to enter the chimney.   He knew the danger and gave no warning.   We cannot say that the danger was apparent, or that the superintendent had a right to assume that Cote would look out for himself.   The only thing which it was entirely plain might come down was light, burning cotton waste, which would do no harm.

It is said that if Matthot, Cote's fellow servant, did not give warning, the death was due to his negligence, not to that of the superintendent, and that if he gave the warning to which he testified, then neither he nor the superintendent was negligent. But the jury might have found that Matthot did all that he had any reason to suppose that he ought to do, that Cote received no warning, and that the superintendent, knowing all the facts, ought to have seen that he was warned.

The evidence as to what the superintendent expected Matthot to do was evidence under the circumstances of what was the reasonable interpretation of the order setting him to work.

We have dealt with all the exceptions which were argued and have examined the others.   We see no ground for disturbing the verdict.

*Exceptions overruled.*