JOHN MEIER, Administrator of the Estate of Emil Meier, Appellee, v. WAY, JOHNSON, LEE & Co., Appellant.

**Negligence:** ACCIDENTAL DEATH: JURY QUESTION. Whether a death was accidental, when urged in defense to an action for negligence, is a question for the jury.

**Evidence:** *Res gestæ.* The declarations of the superintendent of a grain elevator, that he had sent an employé into a bin for the purpose of removing an obstruction to the flow of grain, made within a few minutes afterwards and while efforts were being made to remove him are admissible in an action for his death, as *res gestæ.*

**Master and servant:** VICE PRINCIPAL. One in charge of a grain elevator, accustomed to employ men and direct them in their work, is a vice principal for whose negligence the master is liable.

**Negligence.** To send a workman into a dangerous place, to perform work for which he was not employed and without warning him of the danger, is negligence.

**Same:** WARNING. A lack of evidence that a servant was not warned of a danger raises no presumption that he was warned.

**Negligence:** INSTRUCTION. An instruction covering the questions of negligence in directing an employé to perform a certain service in a dangerous place without warning him of the danger, and of the employé's contributory negligence, is held to correctly state the law of the case.

**Negligence:** ASSUMPTION OF RISK. The questions of whether dangers are open and obvious to an employé and of the duty to warn him are for the jury; and a boy sent into a place with which he is not familiar does not assume the risk of dangers incident to the work.

**Same:** PRESUMPTION AS TO CARE. In an action for the death of a servant it is presumed that he was in the exercise of due care when he received his injuries.

*Appeal from Kossuth District Court.*— HON. W. B. QUARTON, Judge.

TUESDAY, APRIL 9, 1907.

REHEARING DENIED, TUESDAY, NOVEMBER 19, 1907.

ACTION to recover damages resulting from the death of Emil Meier due to defendant's negligence in failing to warn him of the danger of the place when he was set to work, and to defendant's negligence in ordering him into an unsafe place to work. Defendant denied all negligence, pleaded contributory negligence and assumption of risk. Upon these issues the case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals. — *Affirmed.*

*Carr, Hewitt, Parker & Wright* and *Sullivan & Mc-Mahon,* for appellant.

*Healy Bros. & Kelleher* and *P. T. Vaughn,* for appellee.

DEEMER, J.— Prior to and on July 28, 1903, defendant, a corporation owned and was operating a line of elevators; one of which was at Hanna, a small station on the line of the Minneapolis & St. Louis Railway. One Fox was in its employ in connection with the last-named elevator. On or about July 25, 1903, defendant was informed that Fox was short some oats, and on or about the 27th of that month one Granger, defendant's superintendent, went to investigate the shortage. When Granger appeared Fox notified him that he had discovered some oats in a shipping bin of the elevator which he did not know about, and Granger notified him (Fox) that these must be weighed and again placed in the elevator, directing Fox to procure a team to haul the oats. Thereupon Fox arranged with the father of plaintiff's intestate for a man and a team to appear at the elevator next morning. When the morning came, Emil Meier, the deceased, a boy of a little over sixteen years of age, appeared with a team, and undertook the work of transferring the oats. The boy leveled the oats in the wagon and drove the

team.   While removing the oats some obstructions interfered with their free flowage from the bin, and it is claimed that Fox sent the boy into the apartment for the purpose of having him remove this obstruction, and that while there the oats fell in upon him and smothered him to death. There is no doubt that the boy was smothered to death by reason of the  oats falling over and upon him; but defendant denies that it, or any of its agents, ordered the boy to go into the bin or that they knew he was there until some time after he had disappeared.   •

Many points are relied upon for a reversal, to some of which we shall give attention.   That the bin was a dangerous place for a boy either at work or in play is frankly conceded, but it is claimed that the death of the intestate was an accident, for which no one is responsible.   That question, as we think, was clearly for a jury, and, with its finding in this respect, we shall not interfere.   *McGovern v. Railroad,* 123 N. Y. 280 (25 N. E. 373); *Grimmelman v. Railroad Co.,* 101 Iowa, 74.

1. NEGLIGENCE: accidental death: jury question.

Both Granger and Fox testified that they did not send the boy into the bin, and each said on the witness stand that they told him not to go.   The boy is dead and, of course, his lips are sealed.   It appears, however, from some of the testimony that within five minutes from the time the boy was last seen, plaintiff, who is his father, was called from his field by Granger, and that he ran over to the elevator as fast as he could.   When he arrived there, attempts were being made to rescue the boy by going into the bin and attempting to secure his removal from above.   This failing, a hole was chopped in the bottom of the bin, and the body was removed in this way some twenty-five or thirty minutes from the time the boy was last seen alive.   Plaintiff testified that when he appeared after Granger had called to him, Fox said that he (Fox) had sent the boy up into the bin, and that they could not find him.

2. EVIDENCE: *res gestæ.*

Plaintiff's wife and another son almost immediately appeared upon the scene, and to each of them it is claimed that Fox said he had sent the boy into the bin to remove a board which was on the spout leading from the loading bin. When these declarations were made, all parties seemed to think the boy was still alive and efforts were then being made to extricate him, but all without success until he was suffocated.    That the declarations of Fox were admissible as part of the *res gestœ* is too clear for argument.   *Alsever v. Railroad,* 115 Iowa, 338; *Keyes v. Cedar Falls,* 107 Iowa, 509; *Christopherson v. Railroad Co.,* 135 Iowa, 409, and cases cited.

II.   It is claimed that Fox was nothing but a fellow servant for whose acts defendant was not responsible.   The testimony, however, shows that he (Fox) was in charge of **3. MASTER AND** the elevator, that he was accustomed to em-**SERVANT: vice principal.** ploy men to assist him therein, that deceased was employed by him, and that he gave deceased, as well as others, directions as to their work.   In ordering deceased into the bin, and directing him as to his work, Fox was clearly the *alter ego* of defendant and manifestly a vice principal.   *Foley v. Cudahy Packing Co.,* 119 Iowa, 246; *Newberry v. Getchel & Martin Co.,* 100 Iowa, 441; *Cushman v. Coal Co.,* 116 Iowa, 618; *Blazenic v. Coal Co.,* 102 Iowa, 706, and many cases cited.

That it was negligence to send the boy into a dangerous place, and to do a work for which he was not employed without warning him of the dangers, is well settled by our **4. NEGLIGENCE.** own cases above cited.   See also, *Lund v. Woodworth,* 75 Minn. 501 (78 N. W. 81); *Nash v. Press Co.,* 109 Mo. App. 600 (83 S. W. 90).

III.   But it is said that Granger warned the boy that the place was an unsafe one, and if this be not true, that **5. SAME: warning.** there is no proof that he was not warned. Upon both propositions there is direct testimony to the effect that the boy was not warned.   Even if

there were no testimony upon the point, this would not justify a reversal. *Grimmelman v. Railroad Co.,* 101 Iowa, 74.

IV. The seventh instruction, which reads as follows, is complained .of:

One of the charges of negligence on the part of the defendant is that the defendant failed to give the said Emil Meier any caution, warning, or instruction as to the dangers 6. NEGLIGENCE: or hazards of the place where he was set to instruction. work, or the work he was required to do. In relation to this matter, you are told that it is the duty of a master to use reasonable and ordinary efforts to warn or instruct young or inexperienced servants respecting the danger, if any, of obeying directions given to such servant, whenever obedience to such orders or directions will expose such servant to danger of injury from any cause which is known, or which would, in the exercise of ordinary care, be known, to the master, whenever the master knows, or, in the exercise of ordinary care, should know, that the servant, because of youth or inexperience, is not aware of the danger; and providing the danger is not known, or open and obvious, so that in the exercise of ordinary care the servant would be aware of such danger. As applied to this case, if you find from the evidence that the defendant directed Emil Meier to go into the bin where he met his death, and if you further find from the evidence that the same was a dangerous place, and going into the bin was a dangerous undertaking, and if you further find from the evidence that the defendant, through his agents or employés in charge of the work, knew that Meier was about to go into the bin, then you are told that it was the duty of the agents in charge of the work to notify and warn Meier of the dangers which, in the exercise of ordinary care, they either knew, or should have known, he was about to encounter. However, if you should find from the evidence that the defendant, through its agents in charge, directed Meier to go into the bin, yet if you should find from the evidence that at the time Meier went into the bin he knew the condition thereof, or if you should find from the evidence that the dangers he did encounter were open or obvious, so that in the exercise of ordinary care Meier could be aware of the dangers he was about to encounter, then the defendant would not be liable for the injuries sustained, or for the death of Meier.

The instruction is manifestly correct. See *Grimmelman's* and *Newberry's* cases, *supra*. The instruction should be read as a whole in determining its correctness.

Further, it is said that the dangers were open and obvious, and that there was no duty to warn. This was a question for the jury. In this connection, it must be re-

**7. NEGLIGENCE: assumption of risk.** membered that the lad went into a place with which he was not familiar pursuant to a specific order. In such cases the doctrine of assumption of risk has no place. *Strong v. Railroad,* 94 Iowa, 380 ; *Stomne v. Produce Co.,* 108 Iowa, 137; *Cushman v. Fuel Co.,* 116 Iowa, 618.

The testimony showed that the place was dark, and that plaintiff's intestate had never been in it before. In such cases the doctrine of assumption of risk has a very narrow application. *Cote v. Lawrence Co.,* 178 Mass. 295 (59 N. E. 656). In any event the doctrine of assumption of risk was for the jury. The same may be said of the question of contributory negligence.

The boy being dead, the case is aided by the presumption that he was in the exercise of due care when he received

**8. SAME: presumption as to care.** his injuries. The dangers were not obvious, and in any event the age of the deceased should be considered in solving the question as to his care.

The case was peculiarly one for the jury, and with its finding we shall not interfere. The judgment must therefore be, and it is, *affirmed*.