MARGUERITE F. MURRAY v. THE CHICAGO, ROCK ISLAND, and PACIFIC RAILWAY COMPANY, Appellant.

**Master and servant:** ASSUMPTION OF RISK: MATTERS TO BE CONSIDERED: EVIDENCE. The age and experience of an employee, and the nature of the dangers involved incident to the use of machinery, as distinguished from the obvious physical construction of machinery, are matters to be considered in determining whether the risk was so obvious as to have been appreciated by an employee, acting as a reasonably prudent person. In the instant

case the question of whether an inexperienced employee assumed the risk in operating unguarded laundry machinery was for the jury.

Same: NEGLIGENCE: FAILURE TO WARN.  If the dangers of an employment are not such that a reasonably prudent person, considering his age and experience as known to the employer, must appreciate them, then it becomes the duty of the employer charged with knowledge of such dangers to give the employee instruction and warning with respect thereto, a failure to do which is negligence.

Same: ASSUMPTION OF RISK: FAILURE TO WARN: INSTRUCTION.  Where assumption of risk and failure to warn are closely related both may be treated in the same instruction; especially where the jury is specifically told that defendant has the burden of establishing assumption of risk and the plaintiff of showing negligence in failing to warn.

Same: NEGLIGENCE: FAILURE TO WARN.  Where a young and inexperienced person was employed in a laundry for some time to do ironing by hand and the employer had no reason to believe that she was experienced in the operation of dangerous machinery, it was negligence to put her to work with the machinery without instruction or warning, and representations by another as to her experience was immaterial.

Same: UNGUARDED MACHINERY: NEGLIGENCE AS MATTER OF LAW: INSTRUCTION.  Where the practical operation of a machine requires the operator to work within the zone of danger, which could be avoided by a guard, and the undisputed testimony of a witness qualified to speak is to the effect that the machine could be guarded so as to prevent injury to the operator, the court is justified in charging the jury as matter of law that failure to guard the machine as required by the Factory Act is negligence.

Same: UNGUARDED MACHINERY: EVIDENCE OF CUSTOM.  While it is competent to show the general use of machines in design and plan like the one in question, still evidence of a witness qualified to speak on the subject that he had never seen a machine of that character protected by guards would not tend to show the prevailing custom in that respect, and its rejection was therefore proper.

Same: DAMAGES: EVIDENCE.  While it may not be proper to permit a showing of what one permanently injured might have earned, as bearing on the question of damages, in some other calling than that in which permanently engaged; still where a young girl, injured by the loss of her fingers, was shown to have been

preparing herself to teach instrumental music, was an apt pupil and had capacity for becoming an expert musician, evidence as to the average earnings of a music teacher was admissible; especially where the real inquiry related to how such teachers were paid, whether by the lesson or pupil.

**Same:** EXCESSIVE VERDICT. In this action for the loss of all fingers 8 of one hand at the knuckles and one finger of the other hand, pain and suffering, and distress and anguish on account of the disfigurement, a verdict of $15,000 is upheld.

*Appeal from Scott District Court.*—HON. D. V. JACKSON, Judge.

FRIDAY, NOVEMBER 17, 1911.

ACTION to recover damages for personal injuries received by plaintiff while in defendant's employ engaged in the operation of a laundry mangle. A previous trial resulted in a verdict for plaintiff in a sum of $17,375, and a new trial was granted on defendant's motion. The ruling of the court granting such new trial was sustained on plaintiff's appeal to this court. See 145 Iowa, 212. On a second trial the jury returned a verdict for plaintiff in the sum of $15,000, and from judgment on this verdict defendant now appeals.—*Affirmed.*

*Carroll Wright, J. L. Parish,* and *Cook & Balluff,* for appellant.

*Finger & Letts* and *M. J. Wade,* for appellee.

McCLAIN, J.—The facts appearing in the record as supported by the evidence were set out to some extent in the opinion on the former appeal, but, for the purpose of disposing of some of the questions now raised, a fuller statement seems to be necessary.

The plaintiff, a girl seventeen years of age, was employed in a laundry owned and operated by the defend-

ant, first in ironing by hand.   This employment continued from January to April, 1906.   From April to July, when plaintiff was injured, she was employed about the mangle, a piece of machinery used for ironing tablecloths, napkins, towels, sheets, and pillow slips.   This machine consisted of a hollow cylinder or drum about seventy-five inches long and eighteen inches in diameter heated by steam to about 175 degrees of temperature.   Above the cylinder and in contact with it were three smaller rollers caused to revolve by belts, and the operation of ironing was performed by sending the articles to be ironed by means of a canvas apron to the cylinder over which they were carried between its surface and the surface of the rollers, being received on the other side at a table by an employee who took the articles from the machine as they passed from the third roller.   On the feeding side there was a guard to prevent the hands of the feeder from being caught between the cylinder and the first roller, but on the receiving side the third roller, which was about as high from the floor as the breast or shoulders of the operator, was unguarded.   The danger to the receiving operator, if any, resulted from the necessity of sometimes catching the article passing through off the surface of the third roller to which it might adhere if not already perfectly dry; the effect of such adherence being that the article might become wound around the third roller so as to necessitate the stopping and reversal of the machine in order to get it loose.   The articles to be ironed were fed into the mangle while still comparatively wet, and the first passage through the machine did not effectively dry them, so that it was necessary to bring them forward, and send them through a second time.   On the second sending there was no danger, as it appears, of their adhering to the surface of the third roller.   Plaintiff, although employed about the mangle for three or four months prior to her injury, had not been engaged in receiving from the mangle articles which passed through

for the first time, and therefore which might adhere to the
third roller so as to make it necessary that the receiving
operator pull them loose from the surface of the roller, until
about fifteen minutes before the accident. In attempting
to detach from the third roller a tablecloth, the end of
which had adhered to it, her right hand was caught between
the roller and the cylinder, and in the effort to extricate
it her left hand was also caught, and her fingers drawn in
up to the knuckles. The pressure was such that the
fingers were completely flattened, the bones being crushed,
and it was impossible to extricate the left hand until
the machine was stopped, and the pressure removed by
releasing the screws that set the cylinder. The injuries
to plaintiff's hands necessitated the amputation of one
finger of the right hand and all the fingers of the left hand
at the knuckles. The allegations of negligence which were
submitted to the jury, so far as it is necessary to state them
on this appeal, were, first, failure to provide a guard to the
third roller; and, second, failure to warn plaintiff of the
danger incident to the operation of the machine without
such guard. The defendant denied all allegations of
negligence, and affirmatively alleged assumption of risk.

I. We may conveniently consider together the ques-
tions presented as to assumption of risk and failure to
warn; these questions being raised by assignments of error
involving the sufficiency of the evidence under
the instructions as to assumption of risk to
sustain a verdict for the plaintiff and the
propriety under the evidence of the submis-
sion of any issue as to the duty to warn. The
jury was instructed that plaintiff assumed, not only the
risks and dangers ordinarily incident to the employment,
but also any particular risks or dangers caused by defend-
ant's negligent manner of conducting its business, or its
negligence in not providing proper guards for its machinery,
if she knew such risks and dangers or they were obvious

1. MASTER AND
SERVANT: as-
sumption of
risk: matters
to be con-
sidered: evi-
dence.

and apparent to persons of ordinary prudence and understanding, and the contention for appellant to which the major portion of the argument of counsel is directed is that the risks and dangers incident to the operation of the mangle without a guard to the third roller were so obvious that, under the instruction referred to, the assumption of such risks and dangers was conclusively established, and the duty to warn was conclusively negatived. This contention, we think, cannot be sustained.

In determining whether the risks and dangers incident to the operation of machinery in the condition in which it is used are so obvious as to have been necessarily appreciated by the employee as a reasonably prudent person and to have been assumed, the court may properly take into account the age and experience of the employee; *Bromberg v. Evans Laundry Co.,* 134 Iowa, 38; *Woolf v. Nauman Co.,* 128 Iowa, 261; *Shebeck v. National Cracker Co.,* 120 Iowa, 414; *Gray v. Commutator Co.,* 85 Minn. 463, (89 N. W. 322); *Dallemand v. Saalfeldt,* 175 Ill. 310, (51 N. E. 645, 48 L. R. A. 753, 67 Am. St. Rep. 214); *Mundhenke v. Oregon City Mfg. Co.,* 47 Or. 127, (81 Pac. 977, 1 L. R. A. [N. S.] 278), and note; and the nature of the risks and dangers involved in such operation, as distinguished from the mere obvious physical construction of the machinery; *Harney v. Chicago, R. I. & P. R. Co.,* 139 Iowa, 359; *Latman v. Douglas & Co.,* 149 Iowa, 699; *O'Connell v. Smith,* 141 Iowa, 1; *Lynch v. Lynn Box Co.,* 200 Mass. 340; (86 N. E. 659); *Allen v. Jakel,* 115 Mich. 484, (73 N. W. 555); *Thompson v. Allis Co.,* 89 Wis. 523, (62 N. W. 527). Many cases are cited for appellant in which it is held under facts in some of them quite analogous to the facts of this case that even an immature person, with little experience, must be deemed as a matter of law to assume the risk of his fingers being caught between rollers about which he is working; the construction and action of the machinery being plainly

apparent. Among these cases are the following, which are quite in point: *Berger v. St. Paul, M. & M. R. Co.,* 39 Minn. 78, (38 N. W. 814); *Hess v. Escanaba Woodenware Co.,* 146 Mich. 566, (109 N. W. 1058); *Butler v. Frazee,* 211 U. S. 459, (29 Sup. Ct. 136, 53 L. Ed. 281); *Stuart v. West End St. Ry. Co.,* 163 Mass. 391, (40 N. E. 180); *Marsden Co. v. Johnson,* 89 Ill. App. 100; *Jones v. Roberts,* 57 Ill. App. 56; *Wallace v. Haines,* 77 N. J. Law 184, (71 Atl. 44); *Mika v. Passaic Print Works,* 76 N. J. Law, 561, (70 Atl. 327); *Hickey v. Taaffe,* 105 N. Y. 26, (12 N. E. 286); *Greef v. Brown,* 7 Kan. App. 394, (51 Pac. 926); *O'Hare v. Keeler,* 22 App. Div. 191, (48 N. Y. Supp. 376). Several of these cases relate to injuries at a mangle.

The question before us is one on which a multitude of cases, more or less in point, might be cited on either side; but the further citation of authorities would be of no advantage. It is enough to say that in the light of our own decisions in similar cases we have no difficulty in reaching the conclusion that the question of assumption of risk was properly submitted to the jury, and that the verdict is supported in the evidence. As distinguishing this case from many which are cited for the appellant, it may well be observed that plaintiff was a young girl, inexperienced with reference to machinery in general, and without knowledge of the particular danger involved in attempting to remove from the roller articles which would cling to it, unless such knowledge is to be imputed to her as a matter of law; that the danger of having her fingers caught between the third roller and the cylinder of the mangle was not incident to the ordinary operation of receiving the articles as they usually came out of the mangle, and arose only when the effort was made in special cases to prevent the articles from adhering to the third roller, and thus becoming wound up in the machine; that such operation was one necessary only in an emergency and requiring

quick action; and that, as the evidence tended to show, plaintiff had heard other employees often scolded for allowing the articles to become wound around this roller. We think that we ought not to say as a matter of law that the danger of this particular operation was so obvious that it must have been appreciated and assumed by the plaintiff.

What has been said as to assumption of risk is necessarily applicable to the duty to warn. If the risks and dangers of the employment were not such that the plaintiff, as a reasonably prudent person in view of her age and experience as known to the defendant, must have appreciated them, then it was the duty of the defendant charged with knowledge of such risks and dangers to instruct the plaintiff with reference thereto, and defendant was negligent in not doing so. From the evidence we think it clear that such an instruction and warning should have been given in this case.

2. SAME: negligence: failure to warn.

The complaint that the instruction as to assumption of risk and duty to warn was confusing, in that it referred to both subjects, is without merit. Under the facts in this case, the two questions were so closely related that no prejudice could have resulted from treating them in the same instruction. The jury was specifically told that the burden was upon defendant to show that plaintiff assumed the risk, and in another instruction was properly advised that the burden of showing negligence in failing to warn was upon plaintiff.

3. SAME: assumption of risk: failure to warn: instruction.

With reference to the duty to warn, it is contended, however, that the court erred in striking out testimony of defendant's manager, who employed plaintiff, that he hired her for an experienced girl, and supposed that she knew the dangers of the machine. He explained that his sole information as to her experience was that she said she had worked in another

4. SAME: negligence: failure to warn.

laundry, and that the girl who suggested his employing plaintiff as a substitute said that she was experienced.

As plaintiff was employed in the first instance for ironing by hand and continued in that employment for about four months, the manager had no reason to assume that she was familiar with the operation of a mangle and the dangers incident thereto. He testified that he made no inquiry of her on the subject when he directed her to work at the mangle, and gave her no warning or instruction as to the danger of such work. Under these circumstances, we have no occasion to discuss the question argued by counsel as to whether plaintiff was bound by representations made as to her experience by the girl who suggested her employment.

II. The court instructed the jury that under the Factory Act (Code Supp. 1907, section 4999-a2) the defendant was negligent in failing to properly guard the mangle against the danger of injury to an employee engaged as plaintiff was in its operation, and it is contended for appellant that the court erred in thus assuming as a matter of law that the opening between the rollers through which the plaintiff's hands passed when she received her injuries could have been covered or guarded without in any manner interfering with the use or efficiency of the machine. Counsel concede that, if it was practicable in the ordinary, proper, and efficient use of the machine to so guard this opening as that the injury to plaintiff would not have resulted, then the defendant was negligent in not providing the machine with such guard, but they contend that there was no such evidence, or at most, only such evidence, as would warrant the submission of the question to the jury. The sole and uncontradicted evidence on this point was that of the witness Estes, who was engineer in defendant's laundry at the time the plaintiff was injured, and who, at the time of giving his evidence, was general

5. SAME: unguarded machinery: negligence as matter of law: instruction.

overseer and engineer of another laundry, in charge of the machinery and its operation. This witness testified that the opening between the second and third rollers through which plaintiff's hands must have passed in order that her fingers should be caught between the third roller and the cylinder was about six inches in width, and the entire length of the cylinder; that at each end of this opening there was a solid frame; and that, as it seemed to him, "there could have been a board or a wire screen, or anything like that, placed there to obstruct your hands or anything from getting in. It could have been put in a niche in the frame, and taken out at leisure whenever it needed to be." It cannot be doubted under the record that this witness was qualified to testify as an expert whether it was practicable without interfering with its proper use to so guard the machine as that an injury such as resulted to plaintiff would not occur. But the real objection of counsel seems to be that he did not so testify. The trial court was justified, however, in construing his evidence in connection with other facts which were established without controversy, such as that the articles to be ironed were carried around on the surface of the cylinder between it and the three rollers, and were only taken out after they had passed under the third roller, and that the only occasion of seizing an article which started back on the surface of the third roller was to prevent it from wrapping around that roller, and thus obstructing the machinery. It seems to be plain that for the practical operation of this machine it was not necessary that the employee receiving the articles coming from it should reach with her fingers into the zone of danger between the second and third rollers. If she failed to catch the article in time when it stuck to the surface of the third roller, the machine could be stopped, and the article loosened without risk. The practical operation of the machine did not involve the putting of the fingers inside the zone of danger, and the risk that they would be

put in a position of danger could plainly have been obviated by some guard between the second and third rollers near the surface of the cylinder. There was no discrepancy in the evidence as to any of the essential conditions, and the trial court did not err, therefore, in telling the jury that the failure to provide such a guard constituted negligence.

The court instructed the jury on the theory that the danger involved in working about this unguarded machine, like any other risk or danger of the employment due to the negligence of the defendant, might have been assumed by plaintiff, and left it to the jury whether, under the evidence, it had been so assumed. The question does not arise in this case whether, prior to the enactment of the recent statute abolishing the defense of assumption of risk as against negligence in properly guarding machinery, such defense was available to a defendant negligent in failing to provide such guard. We need not therefore follow counsel for appellant in their discussion of this subject, nor notice their criticism of our recent case of *Stephenson v. Sheffield Brick & Tile Co.,* 151 Iowa, 371, in which we announced as the result of prior recent holdings of this court "that an employee does not assume the risks incident to the use of a machine which is not guarded as required by statute, although he knows of the unguarded condition, and apprehends the danger incident to the use thereof." It is perhaps proper to say, however, that the opinion in the case of *Tyrrell v. Cain,* 128 N. W. (Iowa), 536, cited in support of that proposition, has since been withdrawn on a petition for rehearing, and will not therefore appear in the official reports of the court. The opinions in these cases had not been announced when the present case was tried in the lower court, and a reannouncement of the views therein expressed is not involved in an affirmance of the rulings of the trial court. This is not said as indicating any doubt with reference to the last announcement of the court on the subject, but as a reason why a further discussion

in view of the criticism of the cases by appellant's counsel is now omitted.

III.   Defendant's manager as a witness, having shown himself to be familiar with the construction of laundry mangles generally in use, was asked to state whether prior to the injury of the plaintiff he had ever seen the rollers on the receiving side of a steam mangle in any way covered or guarded.

6. SAME: unguarded machinery: evidence of custom.

His answer, "Never," was stricken out on motion of plaintiff's counsel; previous questions calling for the same information from the witness having been objected to and the objections sustained.   We think the court did not err in excluding evidence of this character.   It was no doubt competent for the defendant to show the general use of mangles in design and plan such as the one in question in other laundries conducted with reasonable care and prudence (*Kirby v. Chicago, R. I. & P. R. Co.*, 150 Iowa, 587, but witness's statement that he had never seen the rollers on a steam mangle covered or guarded would not itself tend to show a custom prevailing in laundries conducted with care and prudence to leave such rollers unguarded.   As no further effort was made in behalf of defendant to establish any such custom or usage, we think that the answer stricken out would not have been of the slightest assistance to the defendant on the issue whether it was practicable to guard such rollers.   The court did not err, therefore, in striking out the answer.

IV.   A music teacher testified as a witness that plaintiff had taken lessons in music on the piano under her for three years; that she was an apt pupil, and had capacity for becoming an expert musician; further, that she would have completed her course in about four years, and would have become an expert teacher.

7. SAME: damages: evidence.

The witness was then allowed, over objections for defendant, to testify as to the average earnings of a music teacher.   The rulings of the court in this respect

are assigned as error, and it is contended that, while it is proper to show the skill and capacity of the person injured in his calling, it is not proper to show what he might have earned in some other calling. But the answer to this position is that plaintiff had been preparing herself for this calling, and had shown aptitude for it, and therefore it was not, as to her, a mere conjectural possibility. Even if the general subject of inquiry as to the earnings of music teachers was not a proper one, an analysis of the record justified the conclusion that the question as finally put related only to how music teachers were paid, whether by the lesson or pupil, and, as an answer to this question could not have been prejudicial to defendant, failure of counsel to strike out so much of the answer as tended to indicate what the average earnings of a music teacher would be left no prejudicial error in the record on which we would be justified in reversing the case.

V. It is contended that the verdict is excessive, and, if this were an ordinary case of the mere loss of a hand or a foot, we would be inclined to think the allowance larger than we could sustain; but, in addition to the loss of earning capacity, the evidence showed that plaintiff suffered excruciating torture before her hand could be removed from the mangle, that she has since suffered and will continue to suffer much bodily pain on account of the injury, and that she has suffered, and must still suffer, much distress and anguish on account of her disfigurement, which means infinitely more to a young girl than it would to an adult male, and taking these elements into account, as we are justified in doing, we are not inclined to require the remission of any portion of the verdict as a condition for the affirmance of the case. A collation of cases in which verdicts of similar or greater amounts have been sustained in this court or in other courts would serve no useful purpose. The case is

8. SAME: excessive verdict.

peculiar in its facts, and we are satisfied to allow the verdict to stand.

The judgment is therefore *affirmed*.