WILLIAM STARR, Appellee, v. EMMA G. SPERRY, Appellant.

LANDLORD AND TENANT: Premises—Dangerous Condition—Liability of Landlord. "Retention of control" by a landlord of leased premises is the very essence of his liability to keep the premises in a reasonably safe condition. *Held*, a lease by a landlord of the "second floor" of his three-story building embraced the *hallways* of said second floor, and, as a consequence, the landlord owed no duty to one who was injured by reason of the unsafe condition in which such hallway was kept by the tenant; and this is true even though the lease forbade obstructions of the hallway.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

MAY 13, 1918.

REHEARING DENIED SEPTEMBER 30, 1918.

ACTION to recover damages consequent on the falling of a radiator in defendant's building on plaintiff's foot. From judgment against her, the defendant appeals.—*Reversed.*

*Read & Read* and *Blake & Blake,* for appellant.

*C. C. Putnam,* for appellee.

LADD, J.—The plaintiff, at the time in question, was employed as a press feeder by the National Printing Company. Its shop was on the second floor of defendant's building. In the morning of April 1, 1916, he passed along the hallway to the entrance therefrom into said shop; and, as the door was fastened, turned back; and, as he passed a radiator in the hallway against the wall or partition, a few feet from the door, it toppled over and crushed his foot. It was not connected with the heating system, but had been removed from the company's room in October, 1915, by the company or its landlord, Chiesca, or both, and placed in the hallway, where it had continued since. The theory of the plaintiff is that defendant, in leasing the premises, impliedly reserved control and possession of the hallway, and was bound to exercise ordinary care to maintain the same in a reasonably safe condition for use of the tenants and others, and failed so to do. Of course, the radiator in itself was not a dangerous instrumentality, and, if it became such, this was due to a leg's falling out, or other loss of support. As persons were making use of the hallway continuously, the place would not seem an appropriate locality for its storage, and there was room for inquiry as to whether the attention an ordinarily prudent person would have bestowed was given to its condition. This duty, however, was incumbent upon the person having control of such hallway, and our inquiry is directed to ascertain, if possible, who this was. This building, consisting of three stories, is at the southwest corner of West Second and Walnut Streets, known as 200, 202, and 204 Walnut Street, and is owned by

defendant. Prior to January 1, 1916, it had been leased to one Chiesca, who had sublet the second floor to the National Printing Company, under which name one Hutton operated a printing establishment. The latter had leased "the divided west portion of room over 204 West Walnut on second floor" to the Volunteers of America, from December 1, 1914, to December 1, 1918, and the latter were in possession under this lease when the defendant executed a lease to the National Printing Company of "the second floor of the premises commonly known as Numbers 200, 202, 204 of West Walnut (Walnut) Street in the city of Des Moines, Iowa, except space of 12 feet by 12 feet in the southeast corner thereof, which is reserved for purpose of elevator in case first party (defendant) desires to place one in the premises." The term was from January 1, 1916, to January 1, 1918. The conditions were such as are ordinarily inserted in such instruments, and only those following need be mentioned:

"8. It is expressly understood and agreed that lessor shall not be liable for damages or injury to lessee or his family or property or to his employees or their property from whatever cause arising unless the direct result of lessor's culpable neglect or gross carelessness. * * *

"21. If the property herein leased is other than a separate private residence, lessee agrees further not to obstruct the halls or stairways, and to only use same for passage to and from premises leased; not to cover or obstruct any of the skylights or windows that admit light in the courts, halls, or passageways, and not to paint or affix any sign, except with written consent of lessor indorsed hereon.

"25. Lessor agrees to furnish heat from date to May 1st, and from October 1st to May 1st in each year during continuance and life of lease."

The privilege to enter for the purpose of repairs was accorded the lessor, and either party might terminate the

lease after July 1, 1916, on 60 days' notice. The lease contained no express reservations, other than as stated. A lease of the third floor was executed by defendant to the Volunteers of America, with same conditions, save as to use, and for the same term,—that is, for two years from January 1, 1916;—of the third floor and the ground floor of No. 204; and a like lease was made to others of the first floor of Nos. 200 and 202. The following contract was entered into, January 7, 1916, by defendant and H. J. Illsley, in charge of the Volunteers of America:

"That, in consideration that second party, H. J. Illsley, employ and pay for all janitor help necessary, and purchase and promptly pay for all fuel required and necessary, and shall furnish sufficient and necessary heat required for properly heating the building at Numbers 200-202-204 West Walnut Street, in the city of Des Moines, Polk County, Iowa, for the months of January, February, March and April, 1916, for the sum of one hundred dollars ($100.00) per month for each of said months, and same to be in full payment for same, and in consideration thereof, first party agrees to allow said sum of one hundred dollars ($100.00) per month for said four months for said heating, and to apply each month's payment of one hundred dollars ($100.00) upon the rental due and payable for each of said months under the lease with the Volunteers of America, a tenant occupying a portion of said building, and of which said Illsley is manager."

It will be observed that Illsley is to "employ and pay for all janitor help necessary." There is no indication as to what may have been necessary, and the agreement throws no light on the inquiry as to the control of the hallway; nor can it be said that anything done thereunder indicated that defendant had assumed such control. The hallway was swept and scrubbed at the instance of Illsley; but for all that appears, this may have been done because of making

use thereof in connection with the office and rooms of the Volunteers of America on the second floor.

The law is well settled that, in the absence of stipulation to the contrary, the lessee takes the demised property in the condition it is at the time leased, and the landlord is under no obligation to repair the same unless the defect be latent, nor is he liable for injury sustained by a tenant, his family, guests, or others, consequent upon its defective condition. In other words, in the absence of contract, there is no implied undertaking that the premises are or shall be made suitable for the use of the tenant. *Boyer v. Commercial Building Inv. Co.,* 110 Iowa 491. This rule, however, does not apply to those portions of the building (such as passageways, stairways, and the like) that are not demised to the tenant, but are retained in the possession or control of the landlord. With respect to such ways, it is well settled in this state that the landlord is under the same responsibility as the general owner of real estate who holds out an invitation to others to enter upon and use his property, and is bound to exercise reasonable care in keeping such ways ordinarily safe for the tenants and those having lawful occasion to use them. *Burner v. Higman & Skinner Co.,* 127 Iowa 580; *Morse v. Houghton,* 158 Iowa 279; *Flaherty v. Nieman,* 125 Iowa 546. As pointed out in *Siggins v. McGill,* 72 N. J. L. 263 (3 L. R. A. [N. S.] 316):

"In a case of a demise, the entry and occupancy are pursuant to an estate vested in the tenant, and are exclusive of the landlord; while, in the case of passageways and stairways that are retained in the legal possession of the landlord, and are simply used by the tenants as appurtenances to the property demised to them, their ingress and egress are by virtue either of invitation or of necessity."

See *Looney v. McLean,* 129 Mass. 33 (37 Am. Rep. 295). Even though several rooms or apartments of the building are leased without reference being made to the hallways or

stairways affording the tenants access thereto, the landlord retains control over them, and is bound to exercise ordinary care in maintaining them in a reasonably safe condition for his tenants and others having lawful occasion to make use of them. *Morse v. Houghton,* supra. This is for the reason that the tenants could only use the rooms or apartments by making use of the stair or hallway; and therefore, in letting these, the landlord impliedly grants to the tenants an easement over the stairs and hallways. At the common law, as a general rule, the person enjoying an easement is bound to make the necessary repairs, though the grantor of an easement may undertake to keep in repair or safe condition, either in express terms or by reasonable implication. Special circumstances, however, take a case like this out of the general rule. The only way the rooms or apartments can be enjoyed is by access through the ways referred to; and the parties to the demise must have intended, as is necessarily to be implied as a basis, without which the whole transaction would be futile, that the landlord would maintain them, as essential to the enjoyment of the premises demised, and in a reasonably safe condition for the use of the tenants, and also of those persons who necessarily go up and down the stairs and through the hallways in the ordinary course of business with the tenants. In no other manner can the premises be reached. Indeed, it would seem absurd that a room should be leased without making provision for reaching it. On these grounds, the landlord is quite generally held to the implied undertaking to maintain in a reasonably safe condition the stairways and hallways necessary to reach the premises demised. *Miller v. Hancock,* 2 Q. B. (1893) 177; *LaPlante v. LaZear,* 31 Ind. App. 433 (68 N. E. 312); *Dodson v. Herndon,* 147 Ky. 181 (143 S. W. 1011); *Sawyer v. McGillicuddy,* 81 Me. 318 (17 Atl. 124); *Farley v. Byers,* 106 Minn. 260 (118 N. W. 1023); *Flanagan*

*v. Welch,* 220 Mass. 186 (107 N. E. 979) ; *Butler v. Watson,* 193 Mich. 322 (159 N. W. 507).

As observed in *LaPlante v. LaZear,* supra:

"The authorities are not in harmony, but the weight of them declare the rule to be that, where the landlord leases separate portions of the same building to different tenants, and reserves under his control those parts of the building or premises used in common by all the tenants, he is under an implied obligation to use reasonable diligence to keep in a safe condition the parts over which he reserves control."

This conflict in authority is explained in *Burner v. Higman & Skinner,* supra, and need not be further discussed. In the cases cited and many others, halls or passages and stairways were not included in the leases, and, as the landlord retained them, the easements of the tenants, being implied, were upheld.

In the case at bar, it is to be observed that the Volunteers of America had rented a portion of the second story from the National Printing Company, for a period covering the entire term of the subsequent lease to it, for the purpose of using the demised rooms on the second floor in connection with the third floor for hotel purposes, which said Volunteers leased from the defendant for same term covered by that company's lease. This being so, there would seem to have been no occasion for a reservation of the hallway on the second floor as a necessary approach or passageway to be used by the lessees of the third floor. This may explain the form of the lease by the defendant to the National Printing Company, but its language obviates the necessity or the possibility of implying a reservation. It is of "the second floor of the premises usually known as Nos. 200, 202, 204, of West Walnut Street in city of Des Moines, Iowa, except space 12 feet by 12 feet, which is reserved for the purpose of elevator, in case first party desires to place one in premises." This reservation did not become effective, as the les-

sor did not elect to construct the elevator; but, from the inclusion of such reservation, the natural inference is that others were not intended. Even if this were not so, there can be no escape from the conclusion that the description of the demised premises as "the second floor" of the building, included everything in the second story of the premises. As well exclude the rooms therefrom, as the hallways or stairways. The words "second floor" fix the upper and lower boundaries, and the numbers of the building, the lateral boundaries,—that is, the outside walls of the building.

In *Lowell v. Strahan,* 145 Mass. 1 (1 Am. St. 422), the plaintiffs had leased "the first floor and front part of basement in building," and the tenant, defendant, in consideration of the annual payment of $150, allowed a sign to remain on the outer wall, and had also allowed an inscription to be painted on another sign, in consideration of $12.50 per month. The plaintiffs brought the action for money had and received, on the theory that the lease was only of certain rooms in the building, and gave the tenant no right to make use of the outer wall, other than for the customary sign of his own business, and that letting the other signs be there was a trespass; but the trial court ruled that the outer walls were covered by the lease. In approving the decision, the court, speaking through Allen, J., said:

"The words 'first floor' in the building are equivalent to 'first story' of the building, and naturally include the walls. The apparent intention is to separate a section of the building, as a distinct tenement. The words 'first floor' define the lower and upper boundaries of this; but there is nothing to fix the lateral boundaries, except the boundaries of the building. In this respect, the words differ somewhat from the word 'room.' 'Floor' means a section of the building between horizontal planes. The words 'in building' show that the section is of the whole building, and not a part of it. The word 'room' includes a description of the perpen-

dicular, as well as of the horizontal planes which bound the parcel of the house described by it, and excludes the outside of lateral walls, at least when they constitute the walls of another room, as clearly as the words 'first floor' exclude the flooring of the story above it. Under what circumstances a lease of a story of a building would include a space beyond the building over land belonging to it, need not be considered. In this case, the building adjoins the sidewalk, and the words 'first floor in building' must be held to include the entire front wall of that part of the building, unless there is something to control the natural meaning of the language."

The only ground on which liability of the lessor for failure to maintain passageways and stairways in reasonably safe condition can be based, is that he retains control thereof. If these are leased or included in the lease to a tenant, the landlord does not retain control, for that has passed to the tenant. In other words, the lessor vested in the lessee the right to the occupancy of the entire floor, in so far as he might do so. That the lease restricted the use and forbade obstructions can make no difference; for this merely defined the manner of the use or control. Nor is this conclusion obviated if there be an implied reservation of the use of the hallways and stairways by the tenants of the third floor; for the landlord parted with his control and possession of the entire second floor, and the obligation, if any, to keep the hallways and stairways on that floor in good condition devolved upon the lessee of the entire second story. Because of defendant's not retaining or being in possession or control of the hallway in question at the time of the accident, she owed plaintiff no duty, and the verdict should have been for defendant.—*Reversed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.