JOHN PRIMUS, by R. F. PRIMUS, his next friend, appellee, v. BELLEVUE APARTMENTS et al., appellants.

No. 47709.

(Reported in 44 N.W.2d 347)

1056

Harper, Gleysteen & Nelson, of Sioux City, for appellants.

Kindig & Beebe, of Sioux City, for appellee.

Oliver, J.—Plaintiff was injured November 15, 1946. He was then eighteen months of age. For some months he and his parents had occupied an apartment in Bellevue Apartments, Sioux City. His parents had leased this apartment from defendants who operated the apartment building. Defendants maintained in the basement of this building a laundry room and laundry machinery which the various lessees of apartments were entitled to use in common, as appurtenant to the apartments leased to them. On the day in question plaintiff was taken to the laundry room by his mother who proceeded to operate an electric mangle. While she was so engaged plaintiff's right hand was caught and injured in the unguarded machinery in the gearbox of the mangle, pictured on the following page.

Plaintiff screamed in agony until he was given a sedative at a hospital to which he was taken. He was operated upon under a general anesthetic. He remained in the hospital five days and his hand was kept bandaged for about six weeks. Later it was given hot-water treatments. He suffered some pain and lost strength. The doctor testified plaintiff's right hand was mangled, the little finger was off at the base, the third finger at about the base, and the second finger at the first joint. The top of the index finger was crushed and the thumb was cut, but these were saved and plaintiff has full motion of the thumb and first finger. His hand was still tender at the time of the trial, two and one-half years later. He was right handed and could still do some things with his right hand, but used his left also. His father testified plaintiff gets along well with his friends but strange children "notice his hand and shy away from it."

Plaintiff's action for damages, tried to a jury, resulted in a verdict and judgment against defendants for $12,500 from which

they prosecute this appeal. Most of the errors assigned stem from the overruling of defendants' motions for directed verdict, for new trial and for judgment notwithstanding verdict, predicated upon the asserted insufficiency of the evidence to prove negligence on the part of defendants, which was the proximate cause of plaintiff's injury. In considering such assignments of error the evidence will be viewed in the light most favorable to plaintiff.

I. Defendants contend there was no evidence they exercised any control over the laundry room except to make a time schedule for the tenants. Affirmative proof of specific acts of control by defendants was not required. In the language of Morse v. Houghton, 158 Iowa 279, 282, 136 N.W. 675, 677: "* * * as the stairway was made use of by the several tenants, this remained in control of the defendant, and she was bound to keep the same in reasonable repair * * *."

In the absence of proof to the contrary a landlord is presumed to have retained control over premises used in common by different occupants of his property. Starr v. Sperry, 184 Iowa 540, 544, 545, 167 N.W. 531; Iverson v. Quam, 226 Minn. 290, 32 N.W.2d 596, 600; Chalfen v. Kraft, 324 Mass. 1, 84 N.E.2d 454, 456.

However, in the case at bar one of defendants' employees testified: "Amongst other things, I have charge of the laundry room." Moreover, defendants' answer admitted they maintained the laundry room, tenants were given the privilege of using it and the laundry machinery was owned and controlled by defendants and supplied by them "to the tenants as a part of the service for which they were paying rent." That defendants had control of the laundry room and machinery is not open to serious question under the record.

II. Defendants point out they did not warrant or misrepresent or conceal the condition of this part of the premises or agree to repair existing defects therein. They assert also the defect, if any, in the mangle, was open and obvious and existed prior to the time plaintiff's parents leased the apartment from defendants. Hence, they contend they are not liable for injuries to tenants or members of their families caused by such defect. Defendants rely largely upon authorities having reference to

**1060**

defects in parts of the rented premises of which the tenant has possession and over which the landlord does not have control. As already noted, the record in this case shows defendants had control over the laundry room and machinery and maintained the same for the common use of their tenants.

It is the rule in Iowa and in most other jurisdictions that under such circumstances the landlord is subject to liability for injuries resulting from his failure to exercise reasonable care to keep such portions of the premises reasonably safe for such use. Burner v. Higman & Skinner Co., 127 Iowa 580, 588 et seq., 103 N.W. 802; Dillehay v. Minor, 188 Iowa 37, 175 N.W. 838, 11 A. L. R. 106; Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 677–679, 26 N.W.2d 429, 445; 32 Am. Jur., Landlord and Tenant, section 688; 52 C. J. S., Landlord and Tenant, section 417b, pages 24–26; annotations in 25 A. L. R. 1273, 39 A. L. R. 294, 58 A. L. R. 1411, 97 A. L. R. 220. The rule is set out as follows in Restatement of the Law, Torts, section 360:

"A possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe."

Appellants contend: "The lessor is not liable * * * where the premises were used in common by several tenants, and control over them was reserved by the lessor * * * if said defect was an open and obvious one."

Flaherty v. Nieman, 125 Iowa 546, 548, 101 N.W. 280, 281, cited by appellants, states:

"There is no claim that defects * * * were concealed. In these circumstances the rule [of] *caveat emptor* applies, and it is for the lessee to make the examination necessary to determine whether the premises he hires are safe * * *. In the absence of concealed defects, he takes the risk of safe occupancy."

However, in that case the defect was not in a part of the premises "reserved by the landlord for use of the tenants in common." Starr v. Sperry, 184 Iowa 540, 544, 167 N.W. 531, 532, cited by appellants, contains a similar statement but points out it does not apply to those portions of the building such as passageways, stairways, etc., retained in the possession of the landlord: "With respect to such ways, it is well-settled in this state that the landlord is under the same responsibility as the general owner of real estate who holds out an invitation to others to enter upon and use his property, and is bound to exercise reasonable care in keeping such ways ordinarily safe for the tenants and those having lawful occasion to use them." In other words, as to those portions of the premises the tenants and such others are invitees of the landlord and the rules of law governing his duty to invitees are applicable. 52 C. J. S., Landlord and Tenant, section 417b(1), page 26, states: "The duty of the landlord rests on the law of invitation and not on the law of landlord and tenant."

As pointed out in 32 Am. Jur., Landlord and Tenant, section 688, page 563:

"This obligation of the landlord to the tenants * * * has been held not to result from the implied covenant for quiet enjoyment incident to the leases of the several portions of the building, but to be of the same character as that of any other owner or possessor of real estate who invites others to use it for a particular purpose, to keep it safe for those using it within the scope of the invitation."

This doctrine is corollary to the rule hereinbefore quoted at length from Restatement of the Law, Torts, section 360. It inheres in the decisions of this court cited in the first part of this division and in like decisions of other courts. We hold it was defendants' duty to their tenants and others lawfully using this part of the premises with the consent of the tenant to exercise reasonable care to keep it in a reasonably safe condition and that such duty would apply to open and obvious as well as to hidden defects and to pre-existing defects and would not be extinguished by the absence of warranty, or misrepresenta-

1062

tion, or concealment of the condition or the absence of an agreement to repair it.

▮ III. Defendants assert the mangle was not defective in any way. We adopt the following language of the trial court:

"There is no dispute in the testimony about the fact that the end of the mangle in question was left unguarded, exposing a chain and sprocket wheel located two and one-half to three feet off the floor, which chain and sprocket wheel were in motion when the mangle was in use. Pictures of this exposed opening showing the chain and sprocket wheel and their relative location to the floor were introduced in evidence and accordingly such evidence made a jury question as to whether the defendants were negligent in maintaining this mangle without covering the end in question. Clearly it was not for the court to say as a matter of law that such a piece of machinery, located as it was, did not constitute negligence and was not dangerous to those who might reasonably be expected to be in close proximity to such machinery."

See Stephenson v. Sheffield Brick & Tile Co., 151 Iowa 371, 377, 130 N.W. 586.

▮ IV. It is argued the rule of caveat emptor applies in the case of this plaintiff, because, say defendants, it would apply to his parents, the tenants, who would have no cause of action against defendants for a pre-existing defect which was open and apparent and plaintiff would have no better right of action than they. We have already pointed out that the rule of caveat emptor does not apply where, as here, the defect was in a part of the premises reserved by the landlord for use of the tenants in common, and we have held the duty of the landlord to tenants and others in such case is to exercise reasonable care to maintain the premises in a reasonably safe condition and that the pre-existence of the defect and its open and apparent character would not excuse the failure to perform such duty.

▮ V. Mrs. Primus testified she took plaintiff with her to the laundry room at the time in question, started the mangle by plugging a wire into an electric outlet on the wall in the rear, the mangle was operated by a hand lever and a foot lever, plaintiff stood beside her as she sat on the bench working it, she was watching him even though she was operating the mangle, saw him

put his hand on the release lever and asked him to take it off, which he did, and then he screamed and she picked him up and saw his fingers were off. She testified also she had not noticed the unguarded gearbox before the accident, she always took plaintiff with her when she used the mangle, and other mothers took their children there frequently. "I took John down to the laundry room because I had no place else to leave him. I did not want to leave him alone in the apartment." A tenant testified she took her own child to the laundry room. Another witness frequently saw little children in the laundry room, usually took her own child there and at various times saw employees of defendants playing with children there. Witnesses for defendants testified children were not allowed in the laundry room.

The trial court submitted to the jury the question whether plaintiff was rightfully in the laundry room with the express or implied consent of defendants. Defendants make no complaint of the form of the instruction but contend a verdict should have been directed on account of the insufficiency of the evidence on that point. Although the evidence was in conflict, there was substantial evidence tending to prove it was the custom of tenants to take their small children to the laundry room while the various machines were in operation and that defendants were aware of that custom and acquiesced in it. Hence, it was proper to submit that question to the jury.

VI. Defendants contend a verdict should have been directed for them on the ground plaintiff's mother was negligent in starting and operating the machine and such negligence superseded any negligence on their part and was the proximate cause of plaintiff's injury. We are unable to agree with this contention. Under defendants' theory recovery could never be had for injury from an unguarded machine started and operated by the person injured.

In Webber v. Larimer Hardware Co., 234 Iowa 1381, 1387, 15 N.W.2d 286, 289, a judgment for defendant upon directed verdict was reversed where plaintiff, an invitee in defendant's warehouse, was injured by the fall of a pile of steel sheets. The opinion states:

"These sheets were not placed in the pile merely for storage. They were placed there to be sold and removed from the pile

from time to time, one or more to a customer. The act of Gable in removing the sheets was one which the jury could find was reasonably to be anticipated and therefore did not relieve defendant of its negligence, if there was such, in piling the sheets in the manner employed."

Knaus Truck Lines v. Commercial Freight Lines, 238 Iowa 1356, 1366, 29 N.W.2d 204, 209, states: "It is well-settled that where a third party's subsequent act, whether negligent or not, is relied upon as an independent intervening cause it will not have that effect if it or a similar act might reasonably have been foreseen."

In Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 683, 685, 26 N.W.2d 429, 448, an elevator and gates were defective and plaintiff invitee fell into the shaft through a gate left open by the act of a third person. The court stated such an act was reasonably foreseeable and would not relieve defendants from liability, and cited many authorities.

McCreery v. Union Roofing & Mfg. Co., 143 Iowa 303, 308, 119 N.W. 738, 740, states:

"If the defendant was at fault in not providing proper safety appliances, it was wholly immaterial that Lieghty, as coemployee of intestate, was negligent in the use of the appliances provided. Mere concurrent negligence of another with the negligence of the employer will not relieve the latter from liability."

In the case at bar defendants furnished the machine to its tenants for the express purpose of operation by such tenants in the manner in which Mrs. Primus operated it. It is clear such operation would not exculpate defendant from liability for failure to guard the machine.

It may be stated here that plaintiff, being only one and a half years of age, could not be charged with contributory negligence, nor could the negligence of his mother be imputed to him. Fink v. City of Des Moines, 115 Iowa 641, 89 N.W. 28; Raskin v. Sioux City, 198 Iowa 865, 200 N.W. 333. We do not imply the operation of the unguarded machine would constitute negligence as a matter of law on her part. Such propositions are usually questions of fact rather than of law.

VII.   Plaintiff was allowed $12,500 for pain and suffering and disfigurement.   Defendants contend this verdict is excessive and indicative of passion and prejudice.   The briefs refer to decisions involving verdicts for various amounts which were held excessive or otherwise.   Murray v. Chicago, R. I. & P. Ry. Co., 152 Iowa 732, 133 N.W. 123, decided in 1911, involved injuries to the hands and partial loss of fingers.   There the hands of plaintiff, a seventeen-year-old girl, were caught in an unguarded mangle, necessitating the amputation of one finger of the right hand and all the fingers of the left hand, at the knuckles. On appeal a $15,000 allowance was held not excessive, the court pointing out it was an exceptional case.   This would be equivalent to a verdict of several times that amount measured by the depreciated dollar of today.   On the other hand, in many cases involving comparable injuries the amounts allowed have been much smaller.

We have said precedents are of little value because of the varying circumstances and the imponderables and that each case must turn on its own facts.   Dunham v. Des Moines Ry. Co., 240 Iowa 421, 430, 35 N.W.2d 578, 583, 584, points out that in reducing an award or granting a new trial for excessive verdict the court is substituting its judgment on a fact question for that of the jury, and states "* * * only where the award appears to be unconscionable or clearly not warranted by the record should the judgment of the jury, in such matters, be disturbed."

DeToskey v. Ruan Transport Corp., 241 Iowa 45, 48, 40 N.W.2d 4, 6, enunciates the same rule, cites various supporting decisions of this court and quotes from Collins v. City of Council Bluffs, 32 Iowa 324, 331, 332, 7 Am. Rep. 200, 205, a statement that the law imposes on the jury the duty to assess damages in consideration of its fitness to discharge it:

"Neither in fact nor in law are courts better prepared to discharge it; they are not under the law charged with that delicate duty, and should not indirectly assume its exercise when, according to their judgments, verdicts do not accord with their views in the exact amount of damages allowed.   * * * In no case ought a verdict be disturbed unless it is so flagrantly excessive as to raise a presumption that it was the result of passion, prejudice or undue influence, and not the result of an honest

1066

exercise of the judgment and the lawful discretion of the jury."

The record indicates the trial court gave the verdict careful consideration in the light of these pronouncements, pointing out that although it may have been larger than had been customary for injuries of this type, the court could not say the size of the verdict shocked its conscience, rendered an injustice between the parties or indicated passion or prejudice; that the jury should be given a wide latitude in assessing such damages and the court should not invade its province merely because the amount allowed might be more than the court would have given; that it was for the jury to determine how much plaintiff was entitled to for having suffered the injury he received and for having to go through life with that handicap, and the court could not in good conscience interfere with the verdict. A consideration of the record leads us to the conclusion the verdict is not excessive or indicative of passion and prejudice.—Affirmed.

All JUSTICES concur.