LAURA GRACE BOSTIAN, appellant, v. ETTNA JEWELL, appellee.

No. 50996.

(Reported in 121 N.W.2d 141)

APRIL 9, 1963.

Westfall, Laird & Burington, of Mason City, for appellant.

Brown, Dresser, Kinsey & Jolas, of Mason City, for appellee.

LARSON, J.—As plaintiff, a tenant in defendant's apartment house, stepped from the interior hallway door to a common court or patio which led to the street, she slipped upon a patch of ice, fell, and was injured. It is undisputed that the defendant was the owner of the premises and retained possession and control of the hall and passageway where plaintiff was injured. The ice covered an area of about three or four feet in diameter right in front of the door, had not been salted, sanded or cindered, and was very slippery. The involved hall, door and patio were maintained by defendant, and the snow and ice were removed by members of her family or by her employees. That was a part of the service defendant expected to render for the rent paid by the tenants. She usually had sand available and would use it when she noticed it was icy in this areaway.

Plaintiff had entered the building through that door about 12:30 p.m. on March 5, 1960, and came out to get her mail about 5 p.m. She had not noticed the ice on her way in, but due to a leaky roof overhang, she had been aware of such conditions when there was dripping and the temperature was freezing. She occupied one of four apartments required to use this hall and

court for ingress and egress, and had lived there for ten or eleven years.

After her fall she called the landlord, was taken to a hospital for examination, and her ankle and back injuries were treated.

There had been no precipitation on the day of the accident, or the day before, and the maximum temperature over that period was 13 degrees above zero. The day previous there had been a trace of precipitation. It was plaintiff's contention this ice had formed as a result of drippings from a defective cornice, as it had off and on for the past several years, and that defendant knew or should have known of this dangerous condition and had not used reasonable care to correct it.

Defendant contends that plaintiff knew or should have known of this danger, that it was obvious and open, that no duty to plaintiff as an invitee was breached by not immediately correcting the condition, and that she was not an insurer of plaintiff's safety while using this common way.

At the conclusion of the evidence the trial court in Instruction No. 6 told the jury that plaintiff alleged defendant was negligent in failing to use reasonable care to remove ice from the area or to put sand, ashes or some substance on it to make it safe to walk over. It told the jury that the lessor of an apartment who retains in her control a part of the premises which is necessary to the use of the leased part, has a duty "to use reasonable care to keep such part of the premises in her control in a safe condition." It said, "This duty arises when the lessor, by the exercise of reasonable care, could have discovered any dangerous condition and the risk involved therein and then requires the lessor to exercise reasonable care to make the condition safe." It pointed out that the lessor was not an insurer of the safety of persons rightfully using such part of the premises, and said, "the measure of his duty is only to exercise reasonable care to discover and correct dangerous conditions." It further told the jury, "As applied to this case, the defendant was under a duty to use reasonable care to discover dangers from ice on the approaches to the plaintiff's apartment, if any existed, and to exercise reasonable care to make the condition

safe either by removing the ice or placing sand or ashes thereon" and "If you find that the defendant failed in such duty in either respect alleged by plaintiff, then such failure would constitute negligence."

As to the allegation of negligence in maintaining a roof, cornice and eaves so as to allow water and moisture from the roof to fall onto the doorway area and freeze, the court told the jury in Instruction No. 7 that the lessor was under a duty to exercise reasonable care to keep the exterior of the apartment in a safe condition; that while it is not an absolute duty to avoid all unsafe conditions, it "requires the lessor to exercise reasonable care to discover any dangerous conditions and to exercise reasonable care to correct them." As applied to this case the court told the jury "defendant was under a duty to exercise reasonable care to discover any dangerous condition of the roof, cornice and eaves troughs, if any existed, and the risk involved therein, and to exercise reasonable care to make the condition safe", and "If you find that the defendant failed in such duty, then such failure would constitute negligence."

The jury returned a verdict for plaintiff in the sum of $5000 and, upon consideration of defendant's motion for judgment notwithstanding verdict and motion for a new trial, the court granted her motion for a new trial. In the latter motion, which listed six separate grounds, the court denied all except the cause listed (b) alleging that the court erred in giving Instructions No. 6 and No. 7. She contended and here contends that these instructions failed to tell the jury "(1) that a landlord's duty to his tenant is to use reasonable care to keep the premises *reasonably* safe; (2) that such duty applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls and the like, which are not obvious or known to the tenant and which would not be observed by the tenant in the exercise of reasonable care for his own safety, but which defects or hidden conditions are known, or in the exercise of reasonable care should be known, by the landlord; (3) that the duty owed by the landlord to his tenants is owed to such tenants, and to such tenants only, who do not know, or who in the exercise of reasonable care for their own safety have

no reasonable means of knowing, of such defects or dangers; (4) that a tenant assumes all known, normal, obvious or ordinary risks attendant on the use of the premises; (5) that the liability of a landlord to his tenant for negligence in failing to keep the premises reasonably safe for the tenant's contemplated use is based upon a *superior knowledge* on the part of the landlord concerning the danger, and that there is no liability on the part of a landlord to his tenant for injuries to the tenant from a danger which is as well known to the injured tenant as such danger is known to the landlord, or which danger is obvious or reasonably apparent to such tenant; * * *."

 Objections to the instructions given were duly and timely made, but we fail to find them meritorious. However, defendant contends correctly that if any of her grounds for a new trial were good, the order for a new trial should be allowed to stand, even if we do not agree with her contention as to error in Instructions No. 6 and No. 7. Her most vigorous contention, other than as to these instructions, is that the court erred in admitting over proper objection the opinion testimony of Dr. C. O. Adams as to possible future consequences and effects of plaintiff's subsisting injury or condition, including possible future surgery, its cost, and the cost of hospitalization. To a lesser degree defendant also complains of Instruction No. 9 and its adequacy on the issue of contributory negligence. We shall consider these contentions in that order.

 I. Negligence is predicated upon an unperformed duty. The difficulty encountered by the trial court here was as to the care required of a landlord to discover and correct defects in common ways provided for the use of his tenants and their guests. Its confusion was not dissolved by some statements of text writers, reference books, and even our opinions that the tenant occupied the position of an invitee as to the portions of the apartment house reserved under landlord control for the beneficial use of all the tenants. In passing upon the motion for a new trial, the learned trial court said, "In the present case it is conceded that with respect to the portion of the premises where plaintiff fell, the plaintiff is in the position of a *business invitee*." (Emphasis supplied.) If that were true

and no greater care was required than that to a business invitee, then indeed the care required would be only to discover and correct defects or conditions which are in the nature of traps, snares, pitfalls, and the like, which are not obvious or known to the invitee. Atherton v. Hoenig's Grocery, 249 Iowa 50, 86 N.W.2d 252; Anderson v. Younker Bros., 249 Iowa 923, 89 N.W.2d 858; Chenoweth v. Flynn, 251 Iowa 11, 99 N.W.2d 310; Warner v. Hansen, 251 Iowa 685, 102 N.W.2d 140; Denison v. Wiese, 251 Iowa 770, 102 N.W.2d 671; Vollmar v. J. C. Penney Co., 251 Iowa 1026, 103 N.W.2d 715; Robinson v. Fort Dodge Limestone Co., 252 Iowa 270, 106 N.W.2d 579; Corrigan v. Younker Bros., Inc., 252 Iowa 1169, 110 N.W.2d 246; Corkery v. Greenberg, 253 Iowa 846, 114 N.W.2d 327; Wendling v. Community Gas Co., Inc., 254 Iowa 1158, 120 N.W.2d 401.

However, it is generally held that a higher degree of care is required in landlord-tenant common-way area matters than in ordinary business invitee cases, and the rules announced in the above cases are not applicable to the situation at hand. The intended use by the invitee is always a most important element in such matters, and in landlord-tenant cases most authorities agree that the standard of care required of the landlord is much higher than that of a business invitee or a licensee. It was so recognized by us in Primus v. Bellevue Apartments, 241 Iowa 1055, 44 N.W.2d 347, 25 A. L. R.2d 565, and that position was not altered by the cases cited above.

The duty of the lessor in retaining possession of common areas is to exercise a degree of care commensurate with the safety of those entitled to use the common ways as an appurtenance to their leased quarters. In cases of this nature we have cited with approval the Restatement, Torts, Volume II, chapter 13, section 360, which states, "A possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sub-lessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care

could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe." We applied that rule to a similar matter in Primus v. Bellevue Apartments, supra, 241 Iowa 1055, 44 N.W.2d 347, 25 A. L. R.2d 565, where a child's hand was badly injured by an improperly guarded mangle maintained in the common-way area laundry room for use of the tenants.

It is most interesting to note that under comment (a) following section 360 of the Restatement we find as to lessor-lessee arrangements, "The rule stated in this Section applies to subject the lessor to liability irrespective of whether the lessee or those upon the land in his right *know or do not know* of the dangerous condition." (Emphasis supplied.)

In the Primus case it is stated that in the absence of proof to the contrary a landlord is presumed to have retained control over premises used in common by different occupants of his property, that the landlord is subject to liability for injuries resulting from his failure to exercise reasonable care to keep such portions of the premises over which he has control and maintains for the common use of tenants reasonably safe for such use, and that it is the landlord's duty to his tenants and others lawfully using that part of the premises to keep it in reasonably safe condition, and that such duty would apply to open and obvious as well as hidden defects. The decision, we think, is controlling as to the case at bar, and while it is true that decision contains the general statement from 52 C. J. S., Landlord and Tenant, section 417b(1), page 26, that "The duty of the landlord rests on the law of invitation and not on the law of landlord and tenant", and refers to the statement in 32 Am. Jur., Landlord and Tenant, section 688, page 563, to the effect that the obligation of the landlord to the tenant is "of the same character as that of any other owner or possessor of real estate who invites others to use it for a particular purpose, to keep it safe for those using it within the scope of the invitation", the extent of the invitation and care required to lawfully perform the duty imposed clearly was not satisfied by a showing that the tenant knew or should have known of the defect at the time of his injury.

The general rule in such cases as set forth in the annotations found in 39 A. L. R. 294, 295, 58 A. L. R. 1411, 97 A. L. R. 220, and 26 A. L. R.2d 476, is that "the owner of a building who leases it to different tenants, and expressly or impliedly reserves portions thereof, such as halls, stairways, porches, walks, etc., for the use in common of different tenants, is liable for any personal injury to a tenant, or a person in privity with a tenant, due to defects in the portion of the leased premises of which the landlord so retains control, provided the defect is ascribable to the negligence of the landlord, and the tenant or person injured is not guilty of contributory negli-gence." While perhaps some jurisdictions have ventured to apply the general business invitee rule to landlord-tenant matters, and while counsel may have reason to believe we might extend the restricted duty or the "superior knowledge" doctrine to such case, we have not done so and are not so inclined at this time. Only where the landlord has not had a reasonable opportunity to discover and correct the defect have we altered the positive duty of the landlord to use reasonable care to discover and correct the defect. Reuter v. Iowa Trust & Savings Bank, 244 Iowa 939, 57 N.W.2d 225. Knowledge of the defect or a warning in such instances has in no way altered the landlord's duty or affected his negligence in failing to perform that duty.

We are satisfied the court's Instructions No. 6 and No. 7 were not erroneous and that the verdict should not have been set aside upon that ground. The care of the common passageway plaintiff attempted to use was clearly assumed by defendant, and it was her duty to use reasonable care to make it safe for the purpose intended, i.e., the ingress and egress of her tenants including plaintiff. The jury apparently found defendant negligent in performing that duty and its verdict must stand.

II. Defendant complains of the admission of Doctor Adams' testimony regarding the procedure in an operation for a herniated disc. He was asked, "State whether or not an operation for a herniated disc such as in the case of Grace Bostian would be considered a major operation?" (Objection) The court permitted the answer, and Doctor Adams said, "It would be

considered a major operation." The next question was, "An operation such as that takes about how long, doctor?" Defendant objected unless it was tied down based on reasonable medical certainty as to what her future outlook would be. The court permitted the answer, which was, "I suppose the shortest time would be two to two and one-half or perhaps three or three and one-half hours would be closer to an average." A question as to the period of confinement was not answered as defendant asked to be heard on his objection to the relevancy of this testimony. The court then interrogated the witness as to whether these answers had any connection with any reasonable medical certainty or reasonable medical probability that such course would be necessary. He answered, "I think it is a reasonable certainty that she is going to have more trouble, but I don't think it is a reasonable medical certainty that whether or not she has more trouble she is going to have to have surgery." The doctor then testified that plaintiff "in the future probably won't incur any great deal of medical expense as a result of her back condition. * * * The amount of expense for medicine is not likely to be great. The total amount of all these things put together, as I can be reasonably sure are going to happen in the future, will probably be in the neighborhood of $50 to $100."

While the testimony as to an operation and its nature and time should have been stricken when not connected with a reasonable probability, we find little or no prejudice to defendant as a result of the doctor's final conclusion as to reasonable probable expense in the future.

It is true prior to that testimony the doctor was permitted to state, "It is possible" that she would have further trouble with her back requiring surgery, and that deterioration and minor accidents could possibly make an operation necessary. However, the doctor made it abundantly clear he "would anticipate it [the condition] will go along pretty much as it has for the last few months. Chances are that it may slightly improve as the months go by. That is what will probably happen."

▬ The rule is clear that opinion testimony of a physician or medical expert as to the future consequences or effects of

an existing injury or condition is admissible only as to those which are reasonably certain to occur, or which are medically probable. Consequences or effects which are a mere possibility are not admissible. Elzig v. Bales, 135 Iowa 208, 112 N.W. 540; Kime v. Owens, 191 Iowa 323, 182 N.W. 398; Grismore v. Consolidated Products Co., 232 Iowa 328, 5 N.W.2d 646; Cody v. Toller Drug Co., 232 Iowa 475, 5 N.W.2d 824; Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 101 N.W.2d 167; Annotation, 66 A. L. R.2d 1118, section 7(b); 20 Am. Jur., Evidence, sections 863 and 908.

In Grismore v. Consolidated Products Co., supra, we dealt with the admissibility, not the sufficiency, of expert opinions as to causation. We held the testimony was admissible if it is a proper subject of expert opinion upon a question of fact and that the expert could give his opinion as to whether a given injury was probably or was possibly the cause of the later disability or death. Of course no jury question would be resolved on the "possibility" testimony unsupported. Such testimony alone would not satisfy the burden of proof. As bearing on this question see Bradshaw v. Iowa Methodist Hospital, supra, and cases cited.

Here the trial court in Instruction No. 12 told the jury, "The measure of damages for injuries to the person, pain and suffering, and disability, if any you find, will be such amount as will fairly and reasonably compensate therefor. If you find that her injuries are permanent or will to some extent disable her in the future or require further medical or hospital expense or hereafter cause pain and suffering, you should determine and allow such further sum as paid now in advance will fairly and reasonably compensate *for any such items as the evidence shows, with reasonable certainty,* will result in the future from such injuries." (Emphasis supplied.) Thus the jury was told only such items that are reasonably certain could be considered by them, and the evidence of the only medical expert clearly stated that operations and hospitalization were not probable or reasonably certain items for their consideration.

We must conclude no prejudice resulted from the improper testimony concerning such operation, when the doctor

himself made it clear surgery was not a probable result and when the court stated only reasonably certain items could be considered. The trial court's denial of a new trial on that basis was not erroneous and does not justify the order for a new trial by us.

III. Defendant contends the court's instruction regarding contributory negligence is insufficient and that it did not apply the law to the evidence. It is not her claim that it contained error in its statements, but that it failed to inform and instruct as to the duties required of plaintiff to show her freedom from negligence contributing to her injury. Instruction No. 9 told the jury, "Every person is under a duty to exercise ordinary care for her own safety, and a failure so to do constitutes negligence. Whether or not the plaintiff knew or in the exercise of ordinary care should have known of the icy condition at her apartment door is a matter for you to determine and consider, along with all other facts and circumstances shown, in determining whether or not the plaintiff exercised ordinary care for her own safety at the time and place in question." Defendant complains the instruction did not tell the jury "plaintiff was under a duty to exercise all of her faculties in a reasonable or ordinary manner to prevent injury to herself, including the duty to keep a proper lookout."

The jury under this instruction and the evidence could find that the ice was there when plaintiff entered the apartment at noon, and that even though it was dusk she could have seen the ice next to the door when she opened the storm door. We are satisfied the court's instructions covered amply all the possible bases upon which the jury could have found plaintiff failed to observe the ice on the doorway, and that this instruction was properly balanced. Plaintiff testified she did not remember whether or not she looked before stepping out, that she probably did not look, that it was dusk and growing dark in that court when she tried to go after her mail, but that there was in fact sufficient light for her to see.

We think the trial court sufficiently instructed the jury on the material issues in this regard as shown by the pleadings and by the evidence. Harrington v. Fortman, 233 Iowa 92,

8 N.W.2d 713; Law v. Hemmingsen, 249 Iowa 820, 89 N.W.2d 386. No error appears in this instruction such as would require the granting of a new trial.

IV. Having found no error in Instructions No. 6 and No. 7, upon which the trial court granted a new trial, its order based thereon must be reversed.—Judgment reversed and cause remanded with directions to reinstate the jury verdict and enter judgment thereon.

All JUSTICES concur except HAYS, J., who takes no part.