THOMAS MCCLENAHAN, appellee, v. DES MOINES TRANSIT COMPANY, appellant.

No. 51582.

(Reported in 132 N.W.2d 471)

294

JANUARY 12, 1965.

Dickinson, Parker, Mannheimer & Raife, of Des Moines, for appellant.

Duffield, Pinegar & Tapscott, of Des Moines, for appellee.

LARSON, J.—While servicing an advertising sign on the back of one of defendant's buses, plaintiff was struck down and injured when the bus was suddenly moved by one of defendant's employees. In his action for damages the trial court submitted the issue of lookout, contributory negligence, and alleged injuries to the jury. There was a verdict and judgment of $15,000 in plaintiff's favor. In various ways defendant had asked the court to hold as a matter of law that there was no evidence of any actionable negligence against it, that plaintiff was guilty of contributory negligence, and that plaintiff had failed to prove any element of damage alleged. Thus we must now determine whether the trial court erred in overruling defendant's motions and in submitting these issues to the jury.

It appears from the record that on the morning of May 28, 1963, at about 9:30, plaintiff, age 73, was pursuing his usual task in defendant's bus yards of checking and replacing advertising signs on the buses. As an independent contractor working for defendant by the hour, he was checking signs on the rear of buses when he came upon one needing replacement. He proceeded to change it and, while so doing, this bus was backed up "with no warning motor sign or anything", striking him to the ground and pinning him under the motor extension back of the rear wheels. Plaintiff testified: "They did not have a person directing the driver from the outside on this particular day. When I walked up to the back of this bus the motor was not running, * * *." He said he was familiar with Diesel motors and knew the sound of them. He had heard the clash of gears around the yard, but did not hear it at this particular time.

He vaguely remembers being pulled from under the bus and rushed to a hospital. He testified: "I did not at anytime [prior to the accident] have any injury or damage to my ribs or chest" and "I had never had any fractured vertebræ to my knowledge or pain in my back and I could walk perfectly" prior to May 28, 1963. He said: "I am walking with a cane now but I did not walk with a cane prior to this accident." He had had no difficulty performing his checking of some 75 buses a day, and said: "To my knowledge I did not have any arthritic condition of the spine", although sometimes in the morning he would have a

little pain in his left foot, which would leave after he walked a little.

When taken to the hospital he was in a coma, and things that occurred there were vague to him. After a couple of weeks he was transferred to Younkers Memorial for about four more weeks. He was a bed patient and said he had "terrific pain in my chest and back" and so informed the doctors. His chest pains continued, although now he can breathe easier. Since his hospital release he is able to walk a little with a cane, but cannot lift or carry anything without experiencing excruciating pain. He has been unable to straighten up, and his weight dropped from 175 pounds to 134 pounds. He cannot drive a car and must now use a cab to bring groceries from the market six blocks away. He must also hire help to care for his lawn and hedge, and stated he has done no work since the accident.

■ ■ I. It is the duty of the trial court to submit to the jury all issues presented by the pleadings upon which there is evidence tending to support them. Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 61 N.W.2d 696; Clark v. Umbarger, 247 Iowa 938, 75 N.W.2d 243. It is also true that, when considering defendant's motions to direct, the evidence must be viewed in the light most favorable to the plaintiff, and every inference reasonably permissible must be carried to the aid of the evidence. Holloway v. Bankers Life Co., 248 Iowa 517, 527, 81 N.W.2d 453, and citations; Strom v. Des Moines & Central Iowa Ry. Co., 248 Iowa 1052, 1056, 82 N.W.2d 781.

■ II. The first issue raised by this appeal is whether there was sufficient evidence of defendant's failure to keep a proper lookout for plaintiff when the bus was backed out of line for service. Under Iowa law the duty of a motorist to maintain a lookout is not statutory but is a common-law duty to exercise ordinary care under the circumstances. Miller v. Stender, 251 Iowa 123, 129, 98 N.W.2d 338; Law v. Hemmingsen, 249 Iowa 820, 833, 89 N.W.2d 386, 395. Appellant contends plaintiff's evidence shows no breach of duty owed him. We cannot agree.

■ Although plaintiff was on defendant's premises as an invitee, he was there for the mutual benefit of both parties, and

the defendant owed him a duty not to injure him by a hidden unexpected or unknown danger. True, plaintiff was aware that buses were often moved around the yard, knew the sound of Diesel motors, was familiar with the gas and fumes coming from the exhausts, the noise of the gears, and the increased speed of the motors before the bus was moved. He was not familiar with the sudden start of a "dead" bus, and the jury could find this was such a start. Under those circumstances the law required ordinary care by the operator not to injure a person rightfully on the premises. Atherton v. Hoenig's Grocery, 249 Iowa 50, 54, 86 N.W.2d 252, and citations; Rebmann v. Heesch, 227 Iowa 566, 576, 288 N.W. 695; 38 Am. Jur., Negligence, section 96, page 754. Thus, defendant had the duty to maintain a "proper lookout" for plaintiff, whose presence was clearly authorized and whose presence should have been known to or anticipated by the bus driver at the time.

Generally speaking, "proper lookout", when used in connection with the operation of a motor vehicle, means the duty of seeing that which is clearly visible or which in the exercise of ordinary care would be visible. Ritter v. Andrews Concrete Products & Supply Co., 250 Iowa 297, 300, 93 N.W.2d 787. This court has also given the term a somewhat broader meaning. In Becker v. City of Waterloo, 245 Iowa 666, 673, 63 N.W.2d 919, 923, we said: "Proper lookout means being watchful of the movements of one's own vehicle as well as the other things seen or seeable, and involves the care, prudence, watchfulness and attention of an ordinarily careful and prudent person under the circumstances." In Devore v. Schaffer, 245 Iowa 1017, 1024, 65 N.W.2d 553, 557, 51 A. L. R.2d 1041, we pointed out with reference to the term "lookout" that it depends on the context and may mean "care to discover whether plaintiff was in a place of safety from possible injury by the contemplated movement of the truck and trailer."

We think such was the duty of the operator of defendant's bus, and from the evidence before it the jury could find he failed to perform that duty. There was evidence that the operator knew or should have known plaintiff was working at the time in and out of these buses servicing the advertising

carried on them, that he knew there was a blind spot behind the bus for some twelve feet where the driver could not see a person either through the rearview mirror or the rear window. He testified he had remained in the driver's seat some three or four minutes while the motor pumped up the air for the brakes. If this were true, an authorized person could approach the rear end of the bus and start working without being observed by the operator. Obviously, then, he would be in a position of great danger if the bus were suddenly moved backward. Plaintiff testified he had been working a yard or a yard and a half back of the bus for a minute or two when the bus came back on him. While the operator stated he saw no one behind the bus when he arrived, this did not as a matter of law relieve him of the duty to look again for plaintiff, who might well be working behind the bus three or four minutes later. Under these circumstances the jury could find it was the operator's duty to make sure the plaintiff was not working behind this bus before it was backed. Evidence of defendant's negligence, therefore, was sufficient to sustain the verdict.

Defendant cites Williams v. Cohn, 201 Iowa 1121, 206 N.W. 823, Larson v. Loucks, 69 S. D. 60, 6 N.W.2d 436, and Lovel v. Squirt Bottling Co. of Waconia, 234 Minn. 333, 48 N.W.2d 525, which involved the striking down of a child *unexpected* in the vicinity of a motor vehicle delivering goods on request. They, of course, are not in point for, as we have said, plaintiff's presence here could reasonably be expected at that hour. In the case of Nelson v. Mitten, 218 Iowa 914, 255 N.W. 662, also cited by defendant, plaintiff suddenly changed his position from one of safety to one of danger without the driver's knowledge. Factually it also is not in point, for there plaintiff's negligent action could not be reasonably anticipated.

█ III. Under the repeated decisions of this court contributory negligence is peculiarly a question for the jury. In Auen v. Kluver, 250 Iowa 619, 622, 95 N.W.2d 273, we said: "Contributory negligence and proximate cause * * * are strictly issues of fact and are ordinarily for the jury except where, under the entire record, plaintiff's contributory negligence is so palpable that reasonable minds may fairly reach no other con-

clusion. Then and only then does the question become one of law for the court." (Citations)

This is not the rare and exceptional case where the lack of reasonable care is so manifest, flagrant and palpable that reasonable minds may reach only one conclusion. Plaintiff testified that when he came up to this bus it was "stone dead" and the motor was not running. He had worked around these Diesel-operated buses for some fourteen years, was familiar with the smell of fumes coming from the rear end when they were running, knew the sound of a shifting of gears, heard the racing of motors before the bus was put into motion, and that none of these indications was present on this occasion. He said he did not look toward the front of the bus for an operator because the bus was "dead".

Appellant argues the evidence is without dispute that the motor of this bus was running for three or four minutes before the bus moved, that the motor was raced and that blue or black smoke arose from the exhaust, that the motor and gears made a loud noise before the bus started backward. Defendant's driver so testified. Apparently it overlooks plaintiff's testimony that the bus was dead, the motor was not running, and that he heard no noises and saw no smoke before the bus backed into him "like a shot out of the blue." The jury was free to believe or disbelieve this testimony. The conflict is sufficient to create reasonable doubt. The physical fact that the bus did back suddenly does not of itself prove plaintiff guilty of negligence in failing to see or hear the motor and gears before it moved. Under this testimony the jury could find the motor was not running for three or four minutes, but was suddenly started and the gears immediately shifted into reverse. If it so found, it could also find plaintiff did not disregard a timely or proper warning and that his position was not taken in disregard of a known danger. Certainly there would be no danger from a "dead" bus.

It cannot be said this evidence, taken as a whole, discloses no reasonable care on plaintiff's part, or that his acts in servicing the advertising on the back of this bus were so lacking in care that reasonable minds might not fairly reach different conclusions regarding his negligence. We conclude the issue of

contributory negligence was properly submitted to the jury under proper instructions. Its finding of fact was in plaintiff's favor and should not be disturbed.

IV. Appellant's third assignment of error complains of the court's submission to the jury of the issue of whether as a result of said accident the plaintiff sustained fractures of some of the vertebrae in his back, whether he will in the future suffer pain from his back injuries, whether the accident aggravated a pre-existing arthritic condition of his spine, whether as a result thereof his back has been permanently injured, whether he will in the future suffer physical and mental pain as a result of the accident, and whether his earning capacity has been permanently impaired because of permanent disability, because it says there is no evidence in the record to sustain any such findings by the jury. Again we must disagree.

Specifically, appellant contends the medical testimony of the experts, Doctors Thornton and Dorner, fails to support his claim of permanent damage, injury and suffering produced as a result of this accident. Medical witnesses are often referred to as experts, and appellant asserts no expert witness in this case testified as to the probable causal connection between the accident and the elements of damage submitted. It contends the matter of the causal connection between the knockdown and pinning of plaintiff beneath the bus, and his alleged condition at the time of this trial, are not within the knowledge and experience of ordinary laymen, and only medical experts can express an intelligent opinion thereon, citing Hardwick v. Bublitz, 254 Iowa 1253, 119 N.W.2d 886, Bostian v. Jewell, 254 Iowa 1289, 121 N.W.2d 141, and Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 382, 383, 101 N.W.2d 167, 171, 172. It is pointed out we said in the Bradshaw case: "As previously indicated, medical testimony it is possible a given injury was the cause of subsequent disability or 'could have' caused it is insufficient, *standing alone,* to take such issue to the jury. Testimony indicating probability or likelihood of such causal relation is necessary." (Citing cases) (Emphasis supplied.) However, we noted in the Bradshaw case there was no testimony similar to that given in the previous cases of Chenoweth v. Flynn, 251 Iowa 11, 17, 99

N.W.2d 310, 314, and Rose v. John Deere Ottumwa Works, 247 Iowa 900, 910, 76 N.W.2d 756, 761. In both of these cases there was other testimony bearing on the connection, and in the Bradshaw case it is stated that where such expert evidence indicating a possibility is *coupled* with other testimony nonexpert in nature that plaintiff was not afflicted with any such condition prior to the accident, the evidence is sufficient to warrant submitting the issue of proximate cause to the jury.

"Proximate cause", we have said, "is any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred." Chenoweth v. Flynn, supra; McClure v. Richard, 225 Iowa 949, 282 N.W. 312. " 'Proximate cause' is a primary moving cause or predominating cause from which the injury follows as a natural, direct and immediate consequence, and without which it would not have occurred." Daly v. Illinois Central R. Co., 248 Iowa 758, 761, 80 N.W.2d 335.

In Hardwick v. Bublitz, supra, plaintiff was unconscious at the time of trial and of course could not testify as to pain and suffering, the needed support for medical testimony that such pain in the future was possible.

In Bostian v. Jewell, supra, we reaffirmed the rule announced in the Bradshaw case, stating at page 1299 of 254 Iowa: "Of course no jury question would be resolved on the 'possibility' testimony unsupported. Such testimony alone would not satisfy the burden of proof [requirement]."

It is unnecessary to again discuss the reasons fully set forth in those cases for this rule. It is sufficient to point out the "possibility" testimony of the doctors here was supported by the testimony of plaintiff as to resulting disability, pain and suffering, since the accident. As bearing further on the degree of proof required from medical witnesses, see note at 135 A. L. R., pages 516, 517.

In the case at bar Dr. F. Eberle Thornton examined plaintiff on October 3, 1963, in his office, took a history, made a physical examination, and had X rays taken. From the X rays he observed compression fractures or squeezing-down type of frac-

tures which affected the vertebrae, in the area of the ninth dorsal vertebra and the third lumbar vertebra. He stated plaintiff had sustained fractures in the dorsal spine at the D-9 and D-11 level, and had a minor fracture of the third lumbar vertebra, all of which he concluded resulted from the accident of May 28. He also found the patient had sustained fractures of the fifth and sixth ribs on the right side which were well healed. Doctor Thornton also testified "that he [plaintiff] had an aggravation of his preexisting arthritis from this injury. This man as a result of this had an increase in his preexisting arthritis and disability that he had. * * * I felt he probably had in the vicinity of a 75% disability as a man all over in his ability to work, but also felt that considerable of this disability was probably present before he actually had his injury, in the vicinity of 50%. Of course, these are only estimates. I think I could safely say he had a disability as far as his orthopedic injury is concerned to his back and ribs, and the increase in his orthopedic arthritis aggravation, of about 25 to 30% of this 75% disability. * * * This man had a 25 to 30% physical disability as a man as a whole on the basis of the aggravation of the arthritis he had to start with, particularly in the dorsal spine; the neck down to the rib cage. * * * I mentioned in the diagnosis and conclusions an aggravation of the arthritic condition and fractures and either or both of these are capable of causing pain."

Dr. Ralph A. Dorner testified: "According to the X rays this patient did have a lot of arthritis of his spine which undoubtedly was not due to the accident, per se. * * * But many people have arthritis of their spine without it causing a great deal of trouble until something aggravates it, and I think it would be possible for this man to state that he did have arthritis prior to the time of his accident, and that undoubtedly the accident would be sufficient to stir up his arthritis and cause him to have more trouble, or have trouble from his arthritis after the accident."

There is much more in the way of possible disabilities, and coupled with plaintiff's testimony as to his before-and-after condition, it must be concluded the court did not err in submitting these issues to the jury. There is no question as to the qualifica-

tions of the medical experts here or as to the reliability of their findings.

Plaintiff himself testified that to his knowledge he had never had any fractured vertebrae prior to this accident, nor had he any pain in his back, and that he could walk perfectly before the accident. He further testified he was unaware of any prior arthritic condition of his spine, and that since May 28, 1963, he had received no injuries to his chest or back, and could recall none prior thereto.

The truth of plaintiff's assertions as to past and present ability to work and as to pains he now suffers must of course be decided by the finder of fact, and we cannot say as a matter of law there was insufficient evidence here of the elements of damage alleged to place that issue before the jury. His testimony plus that of the experts resolve a jury question as to all those elements.

V.   We are satisfied the trial court committed no error in submitting these issues to the jury, and the verdict and judgment rendered herein must be affirmed.—Affirmed.

All JUSTICES concur.